## KALES v. WOODWORTH, Collector of Internal Revenue.

District Court, E. D. Michigan, S. D. June 18, 1927.

No. 7031.

1. **Internal revenue** ☞7(6)—**Dividend held taxable as "income" of year when actually received (Revenue Act 1918, § 213 [Comp. St. § 6336⅛ff]).**

A dividend actually paid and received by the stockholder in 1919 *held*, under Revenue Act 1918, § 213 (Comp. St. § 6336⅛ff), taxable as "income" of that year, though by decision of the state courts, previously rendered in litigation respecting it, the dividend should have been paid in a prior year when a different statute was in force.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. **Internal revenue** ☞7(6)—**Dividend held not taxable as income of stockholder as of date of court order requiring its payment (Revenue Act 1916, § 31 [a], as added by Act Oct. 3, 1917, § 1211).**

Revenue Act 1916, § 31 (a), as added by Act Oct. 3, 1917, § 1211 (40 Stat. 337), defining dividends as "any distribution made or or-

dered to be made by a corporation," means a distribution by the ordinary methods of corporations, and a decree of court directing payment of a dividend by a corporation is not such an order as contemplated by the statute, and does not render the dividend taxable as income of stockholders received as of its date.

At Law. Action by Alice G. Kales against Fred L. Woodworth, Collector of Internal Revenue. Judgment for defendant.

Beaumont, Smith & Harris, of Detroit, Mich., for plaintiff.

Delos G. Smith, U. S. Atty., and Wallace Visscher, Asst. U. S. Atty., both of Detroit, Mich., A. W. Gregg, Gen. Counsel, Bureau of Internal Revenue, and John R. Wheeler, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

SIMONS, District Judge. This is a suit brought to recover income taxes paid under protest. Special findings of fact have been made upon request of counsel, and it is sufficient for the purpose of this opinion to briefly summarize them.

The plaintiff was from 1916 to 1919 a stockholder in the Ford Motor Company, a Michigan corporation. The taxes assessed against her by the government, paid under protest, and now sought to be recovered, arise out of two cash dividends paid to the plaintiff by the company. The first dividend was the plaintiff's distributive share of the so-called "Dodge" dividend, paid to her July 10, 1919, and the second dividend one paid to the plaintiff in January, 1917. With respect to the Dodge dividend, its history may be briefly stated as follows:

The Ford Motor Company had in its treasury at the close of the fiscal year ending July 31, 1916, a large cash surplus. John and Horace Dodge, stockholders of the company, demanded that a portion of this surplus be distributed as dividends, in addition to the regular dividend. The directors refused the demand, and the Dodges brought suit in equity to compel distribution. The circuit court for the county of Wayne, and the Supreme Court of Michigan, upon review of the circuit judge's decree, held that the action of the directors in refusing to make the distribution was arbitrary and exceeded their discretion, and ordered them to make distribution of 50 per cent. of the said cash surplus, with interest from December 5, 1917, the date of the circuit court's decree. The directors on July 10, 1919, made the distribution as ordered, and a dividend was paid to and received by the plaintiff on that day. Plaintiff thereupon filed an amended 1917 re-

turn, including her portion of the Dodge dividend, and paid an additional tax thereon at 1916 rates. The reassessment made by the Commissioner of Internal Revenue was upon the theory that the Dodge dividend was 1919 income, taxable at 1919 rates.

The second item of dividend involved in this controversy was paid to the plaintiff on January 19, 1917. It was included by the plaintiff in her report filed in June, 1918, and the tax paid thereon computed at 1916 rates. The government assessed an additional tax upon this dividend, upon the theory that 68 per cent. of it was payable out of undivided profits or surplus accumulated during the first 18 days of the year 1917, and should be taxed at the 1917, instead of the 1916, rate. This added tax was also paid by the plaintiff under protest, and the plaintiff, having exhausted all her proper remedies in proceedings before the department for refund in respect to the added taxes upon both dividends, now sues to recover them. It is conceded that all proper steps were taken preliminary to the filing of this suit, as are required by law, that the suit is properly brought, and that the court has jurisdiction. Disputed issues both of fact and law were submitted to the court without a jury, and the court is asked to make findings of fact and to apply its conclusions of law.

[1] The first and more important aspect of the controversy relates to the Dodge dividend. It was declared on July 10, 1919, and paid to and received by the plaintiff on or about the same day. The statute in force upon the date of the declaration, payment, and receipt of the Dodge dividend was the 1918 act, effective January 1, 1918. Section 213 of the act (Comp. St. § 6336⅛ff) provided that all gains, profits, and income derived from dividends shall be included in the gross income for the taxable year in which received by the taxpayer. The statute in this respect is clear and unambiguous, and the Dodge dividend must be considered as part of the plaintiff's 1919 income, unless, as claimed by the plaintiff, that dividend had acquired a different status by reason of the holdings of the circuit and Supreme Courts of Michigan in the Dodge litigation, and the consequent necessity of applying to those dividends the statute applicable at the time the dividend was ordered paid, or should have been paid.

It is contended, first, upon behalf of the plaintiff that the Dodge dividend should have been taxed as 1916 income, at 1916 rates. It is difficult to see how such contention can be given serious consideration. There was no receipt by the plaintiff of dividend in 1916,

there was no declaration of dividend by the corporation, and there was no order entered by any court directing that such dividend be declared. Reliance is placed upon the fact that a temporary injunction issued out of the circuit court for the county of Wayne, which it is claimed impounded the surplus then in possession of the Ford Motor Company for the purpose of paying a dividend, in the event that such dividend should thereafter be ordered by the court to be paid by the company. Even were it to be considered that the impounding of a sum out of which dividends were later declared and paid would in some way make of such dividends income of the taxpayer as between the taxpayer and the government, reference to the terms of the temporary injunction issued by the circuit court makes it clear that there was no such impounding of any surplus in the hands of the Ford Motor Company as is claimed by the plaintiff.

The extent to which the temporary injunction of the circuit court went was the restraining during the pendency of the suit, and until the further order of the court, the use or appropriation of the accumulated cash profits on hand for the establishment of a smelting plant by the Ford Motor Company, an enterprise which was claimed by the plaintiffs in that suit to be ultra vires. No limitation on the right of the Ford Motor Company to use its cash surplus in the regular course of business was imposed by the court. It is conceivable that, had the period following 1916 been a disastrous one in the automobile business, the Ford Motor Company might have used its available cash to pay losses, or availed itself of such surplus for working capital. Certainly nothing in the court's injunction forbade such use of cash surplus.

[2] It is next urged that the Dodge dividend, if not taxed as 1916 income, must be treated as 1917 income, and taxed at 1916 rates. In the Dodge suit against the Ford Motor Company, the Wayne county circuit judge entered a decree December 5, 1917. The applicable sections of the decree are hereto appended.[1] By the terms of the decree the di-

---

[1] Circuit Court Decree, Dodge v. Ford.

First. The defendants Henry Ford, Edsel B. Ford, Frank L. Klingensmith, Horace H. Rackham, and James Couzens, as the board of directors of the defendant Ford Motor Company, shall within thirty days from the entry hereof declare a dividend upon all of the shares of stock of said defendant, Ford Motor Company, in an amount equivalent to one-half of, and payable out of the accumulated cash surplus of said defendant, Ford Motor Company, on hand at the

rectors of the Ford Motor Company were ordered to declare a dividend in an amount equal to one-half of, and payable out of, the accumulated cash surplus of the company on

---

close of the fiscal year ending July 31, 1916, less the aggregate amount of the special dividends declared and paid after the filing of the bill of complaint in this suit and during the fiscal year ending July 31, 1917, which amount so to be declared as a dividend is nineteen million two hundred seventy-five thousand three hundred eighty-five and 96/100 dollars ($19,275,385.96).

Second. The defendant Ford Motor Company shall pay the said sum of nineteen million two hundred seventy-five thousand three hundred eighty-five and 96/100 ($19,275,385.96) dollars to the stockholders of said defendant, Ford Motor Company, pro rata to the number of shares of stock held by each, as a special dividend out of the accumulated cash surplus on hand of said defendant, Ford Motor Company, at the close of the fiscal year ending July 31, 1916, which sum shall be paid at the times and in the manner hereinafter set forth and required.

Third. The owning, holding, or operating by the defendant, Ford Motor Company, of and the using or appropriating or incurring obligations which might require or necessitate the using or appropriating of any funds or other property of said defendant, Ford Motor Company, for a smelting plant or blast furnace or furnaces of the kind or character which the proofs adduced herein show to be contemplated and now in course of construction on or near the River Rouge, and of any lands, buildings, machinery, or equipment therefor, and other incident thereof, is without authority of law and is permanently and absolutely restrained and enjoined.

Fourth. The increase of the fixed capital assets of the defendant Ford Motor Company, beyond those at the date of the entry hereof owned and held by the said corporation, is without authority of law and is permanently and absolutely restrained and enjoined. The date of the entry hereof is taken, instead of the date of the objections raised by plaintiffs to any such increase, at the suggestion of plaintiffs, so that said corporation shall not be in any wise embarrassed through the wrongful acts of the individual defendants. The said fixed capital assets so owned and held at the date of the entry hereof shall be deemed to include such further investment as may be necessary to complete or to complement the same so as to be properly usable in the conduct of the regular business of the said corporation. The said fixed capital assets shall be deemed to be exclusive of those of the kind or character contemplated in the next preceding paragraph hereof.

The holding of liquid assets (including accumulations of and from the earnings and profits of regular business operations from time to time) by the defendant Ford Motor Company, in excess of such as may be reasonably required in the proper conduct and carrying on of the business and operations of said corporation in connection with and by the use of the fixed capital assets, limited as aforesaid, is

hand at the close of the fiscal year ending July 31, 1916. Upon appeal from the decree of the circuit court, the Supreme Court of the state of Michigan, in Dodge v. Ford Motor Co., 204 Mich. 459, 170 N. W. 668, 3 A. L. R. 413, affirmed so much of the decree of the lower court as directed the distribution of dividends, and ordered the payment of interest upon such dividends at the legal rate from the date of the decree of the lower court.[2] Upon the date of the decree of the Wayne county circuit court on December 5,

likewise without authority of law and is permanently and absolutely restrained and enjoined, and said defendant corporation and its board of directors, the individual defendants herein and their respective successors in office, are directed and commanded to declare and distribute as dividends to the stockholders any such excess which may now exist or may accrue from time to time hereafter. The term "liquid assets" as used herein shall be deemed to include all assets other than fixed capital assets within the meaning generally understood in business of said last-mentioned term.

The intent and purpose of this subdivision "fourth" of this decree is to fix a maximum limit for the aggregate assets of the defendant, Ford Motor Company, and if it be practicable to increase either class (fixed or liquid) of assets out of the other without affecting the aggregate, such increase shall be proper—the limit in this subdivision stated for each class having been adopted as the most convenient manner of stating the limit of the aggregate.

Fifth. The defendants Henry Ford, Horace H. Rackham, and Frank L. Klingensmith shall, within thirty days after the entry hereof, come to a full and true accounting of and for all sums used since the filing of the bill of complaint herein in and about the establishing of a smelting plant and the acquiring of lands, constructing of buildings, purchasing of machinery and equipment therefor, and any other incident thereof. The term "sums used" shall be deemed to include obligations or liabilities incurred which have not in fact been paid. Within thirty days after said accounting shall have been completed, said individual defendants in this paragraph named shall pay to the corporate defendant, Ford Motor Company, in pursuance of the obligation of the undertaking executed by said individual defendants and filed in this cause on January 6, 1917, the amount by such accounting found and determined to have been in fact paid out in and about the work aforesaid. Said individual defendants shall likewise pay all sums required to be paid on or in pursuance of any obligation or liability incurred as aforesaid as and when the same shall become due and payable, such payment to be made either to the corporate defendant or to the lawful holder of such obligation or liability and the receipt therefor filed with the corporate defendant or, in lieu of such payment, shall procure the discharge or release of said corporate defendant from all such obligation or liability. When the said individual defendants shall have repaid to said defendant, Ford Motor Company, all sums in fact paid out for the purposes aforesaid, including any sums so paid before the filing of the bill of complaint herein, and shall have secured the discharge or release of said corporate defendant of and from all obligations and liabilities incurred as aforesaid, said corporate defendant shall make and deliver to said individual defendants good and sufficient instruments of conveyance and transfer, but without warranty, of all property of the kind and character in this paragraph mentioned or referred to.

Sixth. The said dividends so to be declared and paid shall be paid as follows: Five million dollars ($5,000,000) within thirty days after the date of entry hereof; the amount found due upon the accounting in the next preceding paragraph hereof provided for, forthwith upon payment of such amount to said corporate defendant, as by said paragraph required; one-half of the balance on or before sixty days from the date of entry hereof, and the remainder on or before ninety days from the date of entry hereof.

Seventh. Jurisdiction is retained by this court in this cause to be exercised on the petition or other application of any parties to this cause or interested in the subject of the controversy herein to make more definite and certain the meaning and intent of any of the provisions hereof; to modify any of the provisions hereof if found to be insufficient to accomplish the purpose intended or oppressive of the rights or interests of any such party.

Eighth. The plaintiff shall recover of and from the individual answering defendants Henry Ford, Edsel B. Ford, Frank L. Klingensmith, and Horace H. Rackham, their costs to be taxed.

Ninth. Plaintiffs shall have execution and all other writs and processes which may be requisite or proper for the enforcement of any of the provisions hereof.

Tenth. If an appeal shall be prosecuted herefrom, with stay of proceedings, then if payment of said dividends or any other act required hereby to be done shall be affirmed, unless the Supreme Court shall otherwise direct, all payments and other acts required by this decree to be made or done within a certain time after the entry hereof shall be made and done within the same number of days after the entry of the decree in the Supreme Court.

[2] Michigan Supreme Court Decree, Dodge v. Ford.

I. The decree of the circuit court for the county of Wayne, in chancery, here appealed from, is affirmed, in so far as the terms and provisions thereof are incorporated herein, but in all other respects and particulars the said decree is reversed, vacated, and held for naught.

II. The defendants Henry Ford, Edsel B. Ford, Frank L. Klingensmith, Horace H. Rackham, and James Couzens, as the board of directors of the defendant Ford Motor Company, shall within thirty days from the entry hereof declare a dividend upon all of the shares of stock of said defendant Ford Motor Company, in an amount equivalent to one-half of, and payable out of, the accumulated cash surplus of

1917, the Income Tax Law in force was the act of 1917 (40 Stat. 300). This statute, like its predecessor, the act of 1916 (39 Stat. 756), provided for the taxation of dividends. It defined (40 Stat. 337, § 31[a]) dividends as any distribution made or *ordered to be made by a corporation.*

It is now contended that the mandate of the decree was such an ordering of distribution of dividends to be made by the Ford Motor Company as to bring such ordered distribution within the definition of dividends both in the 1916 and 1917 statutes; that, the Dodge dividend having been ordered declared by competent authority in 1917, out of the 1916 surplus, the dividend thereby became the income of the taxpayer, if not in 1916, at least in 1917. It is urged that the ordering of the dividend by a court to be made by a corporation is tantamount to the declaration of the dividend by the corporation, and that the order of the court is a higher and more potent order than a declaration by the corporation itself, when the court assumes to supersede the directors of the corporation; that the language of the statute is not limited in its express terms to a declaration of a dividend by the Board of Directors, but is broad enough, and was undoubtedly intended, to cover any distribution of profits which a corporation might be lawfully ordered to make.

The argument is plausible and ingenious. It is not convincing. Clearly the Congress must have had in mind, by the language "distribution made or ordered to be made," the usual and ordinary method of distribution which follows the declaration of a dividend by a corporation, which is at once distributed by the officers of the corporation, or which, ordered by resolution of directors to be distributed by such officers, is to be distributed at some future time. In the ordinary course of events the actual payment of dividends follows immediately or within a reasonable time the order of the corporation that they be distributed. It is more logical to assume that Congress intended to reach the distribution actually made or ordered to be made in the usual way, and not the unusual and extraordinary situation that results from a dividend ordered by a court to be made by a corporation after a period of more or less extended litigation.

I am not able to see the force in this connection of the plaintiff's argument that, if there is any ambiguity in the language of the statute in relation to dividends ordered to be made by a corporation, resort must be had to the rule that the statute will be construed in favor of the taxpayer, and most strongly against the government. We are dealing now with the 1917 statute. There is no ambiguity in the 1918 law, under which the tax was assessed and paid. The status of the Dodge dividend as 1917 income is asserted on authority of the 1917 statute. In other words, if the dividend is not 1919 income, it must be income that was taxable, and could have been taxed by the government, under the 1917 statute. If there is ambiguity in the 1917 statute, and it is claimed there is, and if the rule contended for is applied, it is applied to the 1917 statute, and not to the 1918 act. So applied, the dividend could not have been taxed as 1917 income under the act in force at the date of the decree, and, if not taxable under the 1917 statute, the result is inevitable that it must be taxable under the 1918 statute, as of the date when it was received by the taxpayer.

Other considerations, however, are applicable to this situation. Section 31(b) of the act of 1917 provides that any distributions made to the shareholders or members of a corporation in 1917 or subsequent tax years

---

said defendant Ford Motor Company, on hand at the close of the fiscal year ending July 31, 1916, less the aggregate amount of the special dividends declared and paid after the filing of the bill of complaint in this suit and during the fiscal year ending July 31, 1917, which amount so to be declared as a dividend is nineteen million two hundred seventy-five thousand three hundred eighty-five and 96/100 dollars ($19,275,385.96).

III. The defendant, Ford Motor Company, shall pay the said sum of nineteen million two hundred seventy-five thousand three hundred eighty-five and 96/100 dollars ($19,275,385.96) to the stockholders of said defendant Ford Motor Company, pro rata to the number of shares of stock held by each, as a special dividend out of the accumulated cash surplus on hand of said defendant Ford Motor Company at the close of the fiscal year ending July 31, 1916,

which sum shall be paid within thirty days from the date of the entry hereof.

IV. Upon the amount of such dividend payable to the plaintiffs there shall be paid to the plaintiffs, at the time of the payment thereof, interest at the rate of five per cent. (5%) per annum from the fifth day of December, 1917—the date of the entry of the decree in this cause in the circuit court—to the date of such payment.

V. The plaintiffs shall recover of and from the Ford Motor Company and the individual answering defendants, Henry Ford, Edsel B. Ford, Frank L. Klingensmith, and Horace H. Rackham, their costs of the circuit court to be taxed. The appellants shall recover of and from plaintiffs two-thirds of their costs of this court to be taxed.

VI. Plaintiffs shall have execution for the enforcement of the provisions hereof.

shall be deemed to have been made from the most recently accumulated undivided profit or surplus, and shall constitute a part of the annual income of the distributee for the year in which received. The 1918 law contains a similar provision (section 201[e], being Comp. St. § 6336⅛b), amended in such respects as are not here material.

The language of the 1917 act received careful consideration and was given clear interpretation by the Supreme Court in the case of Edwards v. Douglas, 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235. It will be observed that this case construed a statute which defined dividends as distributions made or ordered to be made by a corporation. The court discussing the history of the statute and the purpose of the Congress with respect to the presumption incorporated in section 31(b), considered that it was essential that every declaration of the corporation should be disregarded, and that the dividends should not be deemed to have been paid from the profits of the earliest year, of which there remained accumulated profits available for distribution, but that the dividends shall be deemed to have been paid out of the available profits or earnings of the most recent year or years, and the court held that its intention so to provide was adequately expressed by the use of the phrase "most recently accumulated," in connection with the words "undivided profits or surplus."

Following the decision of the Supreme Court in Edwards v. Douglas, supra, came the reversal by the Circuit Court of Appeals of the Sixth Circuit, of the decision of the Northern District Court of Ohio, in Mason v. Routzahn, Collector, 8 F.(2d) 56, a decision greatly relied upon by the plaintiff, the opinion of the Circuit Court of Appeals being found under the title Routzahn v. Mason in 13 F.(2d) 702. There the Court of Appeals, in discussing dividends as income, declared:

"That, as between the stockholder and the corporation and from many points of view, such a declaration is a distribution of profits, is indisputable; but this is a taxing statute, the dominant thought of which is that the citizen should suffer an annual burden upon his annual current income. 'Distribution' must mean a disposition which at that moment results in income, because to ascertain taxable income is the purpose and subject-matter of the act, and a dividend declared this year, payable in the next or some more distant year, is not within the normal conception of income for this year. Though the legal duty to pay is fixed by such a declaration, it is commonly recognized that actual and prompt payment is contingent upon the continuance of expected conditions."

It will again be observed that in the Mason Case, as well as in Douglas v. Edwards, supra, the statute construed was the 1917 statute, which defined dividends as any distribution made or ordered to be made by a corporation, and it will also be observed that in both cases dividends had actually been declared by the corporation in 1916, but were not paid until 1917. In view of the reversal of the District Court in the Mason Case, the decision in Phillips v. United States, 12 F. (2d) 598, decided by the District Court of the Western District of Pennsylvania in January, 1926, in which the District Judge relied upon the opinion of the lower court in the Mason Case, loses its force as authority for the proposition that dividends become income when declared, and not when distributed.

The fundamental error in the plaintiff's position seems to me to be based upon a confusion of definition as between dividends and income. Certainly as between the stockholders of the Ford Motor Company and the corporation, the rights of the stockholders were settled by the final decree of the circuit court of the county of Wayne, in so far as it was affirmed by the Supreme Court of the state of Michigan. This court has no power to review the findings of the state court in that respect, and does not do so. The obligation of the Ford Motor Company to its stockholders was fixed as of a certain date. The Dodge dividend, however, did not become the income of the stockholder until the decree of the state court became effective, and it is immaterial whether we say the decree became effective when it was entered, or whether we say it became effective when the Ford Motor Company directors, observing the mandate of the decree, made the distribution of dividends, for until the Dodge dividend was distributed it was not income, the stockholders exercised no control or dominion over it, no part of it could have been used for the payment of taxes or for any other purpose, nor could it have been assessed and taxed prior or to the effective date of the decree.

Stress is laid upon the fact that the court in the Dodge case allowed interest from the date of the decree in the lower court, and also upon the fact that the Internal Revenue Department, upon request of the Ford Motor Company, construed this interest to be an expense of the company, rather than a dis-

tribution of dividends. The adding of interest to that portion of the Dodge dividend ordered by the court to be paid pro rata to the stockholders but emphasizes the fact that the distribution was not made until the decree became effective. If the Ford directors, under the doctrine of constructive receipt, had become trustees for the plaintiff, it would be expected that they would be made chargeable with the interest, rather than having interest made a charge upon the very surplus out of which the dividend itself was paid. To assert that the government fixed the status of the Dodge dividend as income as of December 5, 1917, by a ruling that such interest was an expense of the Ford Motor Company, is to assert against the government acting in its sovereign capacity the doctrine of equitable estoppel. That this doctrine is not applicable appears to be well settled.

Still another consideration may be helpful in understanding whether the Dodge dividend became income when distributed, or whether it became income as of some prior date, when, as the plaintiff claims, it ought to have been distributed. Could the government have taxed the Dodge dividend at any time prior to 1919? That any effort the government might have made to assess such dividends, either in 1916 or 1917, could have been successfully resisted, seems to me to be clear. In Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, the Supreme Court discussed very fully and comprehensively the nature of income, and especially the nature of income that is permitted to be taxed without pro rata distribution under the authority of the Sixteenth Amendment:

"Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word 'gain,' which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived. 'Derived from capital,' 'the gain derived from capital,' etc. Here we have the essential matter: not a gain accruing to capital; not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital, however invested or employed, and coming in, being 'derived'—that is, received or drawn by the recipient (the taxpayer) for

20 F.(2d)—26

his separate use, benefit, and disposal; that is, income derived from property. Nothing else answers the description."

It may be suggested, though it is not necessary as a basis for decision, that, under the reasoning of the case of Eisner v. Macomber, the definition of "income" in the 1916 and 1917 laws, as including dividends paid or ordered to be paid, might have been successfully attacked on constitutional grounds, had the government in a proper case attempted to tax dividends declared in one year, and ordered to be paid in some other year as of the date of declaration. It is not without importance to note that during the many years that income tax legislation, and especially proportional income tax legislation, was under consideration, it was urged by economists and taxation experts too numerous to quote that a proportional income tax, more adequately than did any other tax, measured the ability of the taxpayer to pay. Some such thought was undoubtedly in the mind of Mr. Justice Pitney in writing the opinion in the Eisner Case, when on page 213 (40 S. Ct. 195) of the opinion he said:

"Yet, without selling, the shareholder, unless possessed of other resources, has not the wherewithal to pay an income tax upon the dividend stock. Nothing could more clearly show that to tax a stock dividend is to tax a capital increase, and not income, than this demonstration that in the nature of things it requires conversion of capital in order to pay the tax."

Is this reasoning not just as applicable to dividends which were not distributed, though perhaps they ought to have been distributed, as it is to stock dividends? Such undistributed dividends are of no avail to the taxpayer, either for the purpose of paying the tax or for any other purpose, and so do not constitute income.

Nor is the plaintiff aided in her position by the asserted doctrine of constructive receipt of income. There was in the instant case no such constructive receipt of the Dodge dividend until the date of the Supreme Court's decree; no control at any time could have been exercised by the plaintiff over her distributive share of the corporation's surplus and undivided profits; nor is there merit in the contention that the government may not tax the Dodge dividend as income of 1919, for the reason that by doing so the government would be in a position of profiting by the fraud of the directors of the Ford Motor Company. The government was no party to such fraud, nor can the doctrine of

equitable estoppel be invoked against it acting in its sovereign capacity.

Finally, the status of the Dodge dividend was, since the trial and argument of the instant case, submitted to the Court of Claims upon substantially the same state of facts, and based largely upon the same line of reasoning. In the case of Matilda R. Dodge et al. v. United States, 63 Ct. Cl. ——, decided April 4, 1927, it was there held that the gains or profits from the Dodge dividend were actually received in 1919, and were taxable in that year. While the discussion here has taken a somewhat different course from that in the above case, the conclusion reached is the same.

There remains now only to be considered the assessment made upon the special dividend paid to the plaintiff in January, 1917. Eighteen days of the current calendar year had elapsed when this dividend was paid. There had been no ascertainment of surplus or undivided profits of the corporation for that period. The government allocated 68 per cent. of this dividend to the current profits for 1917, and taxed that portion of the dividend at 1917 rates; the balance being taxed at 1916 rates. It is now claimed by the plaintiff that all of the dividend should have been taxed at 1916 rates.

It is the plaintiff's contention that, no profits having been ascertained at the time the dividend was paid, no part of the dividend should be allocated to the profits or surplus made during 1917. The record discloses that profits were made in 1917 sufficient to pay the aliquot part of the 1917 special dividend. In view of this state of facts, I am foreclosed by controlling authority from arriving at any other conclusion with respect to the January, 1917, dividend than that it was properly assessed. The Circuit Court of Appeals for the Sixth Circuit, in Routzahn v. Mason, supra, in interpreting Douglas v. Edwards, supra, considered that it is not unreasonable to suppose that the most recently accumulated profits are to be judged from the end of the fiscal year during which the income was received, and that no other construction will furnish a common yardstick by which the tax can be measured in all cases. Guided by this authority, as I must be, I am constrained to hold that the tax upon the special dividend of January, 1917, was also properly assessed.

In view of the foregoing, it follows that judgment must be entered in favor of the defendant, and as against the plaintiff of no cause of action, with costs to be taxed against the plaintiff.