# KALES v. WOODWORTH, Collector.

Circuit Court of Appeals, Sixth Circuit.
April 5, 1929.

No. 5105.

Hal H. Smith and Archibald Broomfield, both of Detroit, Mich. (Beaumont, Smith & Harris, of Detroit, Mich., on the brief), for plaintiff in error.

J. R. Wheeler, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., John R. Watkins, U. S. Atty., and C. Frederick Stanton, Asst. U. S. Atty., both of Detroit, Mich., on the brief), for defendant in error.

Before MOORMAN, HICKENLOOPER, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. No objections or exceptions were taken in the court below to the findings of fact, and the case before us presents only questions of law upon the facts found. It involves income taxes for the years 1917 and 1919. The facts relating to the two assessments are somewhat alike. Those pertinent to the earlier assessment will appear from the discussion of the later one.

On July 31 of 1916 appellant was the owner of 525 shares of the capital stock of the Ford Motor Company. That company had a surplus at that time of $111,960,907.53. Of this surplus $52,550,771.92 was in cash. For a number of years theretofore the company had paid annually substantial extra dividends, in addition to a regular dividend. For the year 1916 its board of directors, contemplating the construction of an additional

plant with this surplus, declared only the regular dividend. Thereupon John F. and Horace E. Dodge, who were large stockholders in the company, filed a bill of complaint against the company and its directors in the circuit court of Wayne county, Michigan, praying, among other things, that the directors be ordered to distribute among the stockholders, as dividends, 50 per cent. of the cash surplus on hand on July 31, 1916. On December 18, 1916, a preliminary injunction was issued restraining the defendants from using this accumulated surplus for the establishment of an additional plant, or from incurring obligations or liabilities which might require its use except in the ordinary course of business. On December 5, 1917, a final decree was entered in the circuit court, ordering the directors of the company to declare a dividend in an amount equal to one-half of the cash surplus on hand on July 31, 1916, less a special dividend of approximately $7,000,000 which had been paid on January 17, 1917. The injunction was made permanent as to the construction of the additional plant. An appeal was taken from this decree, and on July 10, 1919, it was reversed by the Supreme Court of Michigan in every particular, except as to the payment of the dividend, with respect to which it was affirmed. Dodge v. Ford Motor Co., 204 Mich. 459, 170 N. W. 668, 3 A. L. R. 413.

Pursuant to this holding the board of directors, on the same date, declared a dividend as of December 5, 1917, of $19,275,385.90, with interest at 5 per cent. per annum, to be paid out of accumulated cash surplus on hand August 1, 1916. This is referred to in the record as the Dodge dividend. Appellant received as her portion thereof $505,978.88, with interest amounting to $40,339.69. Thereafter, on March 25, 1920, she filed an amended income tax return for the year 1917, in which she returned this dividend as a part of that year's income. She paid an additional 1917 tax thereon of $48,601.84. The amount of interest which she received she returned as 1919 income. The Commissioner of Internal Revenue held that this dividend was income for the year 1919, and assessed an additional tax thereon against her for that year. This was paid by the appellant and is the first item involved in this suit.

On or about January 18, 1917, appellant received her pro rata share of the special dividend of $7,000,000 which the Ford Motor Company declared on that date, the amount being $52,500.00. This she included in her income tax return for the calendar year 1917, computing the tax thereon, however, at 1916 rates. The Commissioner of Internal Revenue allocated approximately 68 per cent. of this income to the year 1917, applying the tax rate of that year to it, and assessed against her an additional tax for that year of about $10,000. This amount she paid under protest, and it is the other item involved in this litigation.

The court below held against plaintiff on both of her claims. We proceed first to consider the assessment for 1919. It is admitted that plaintiff kept her accounts and made her returns upon a basis of actual receipts and disbursements, and it is not contended that the Ford Motor Company did not earn sufficient profits from the beginning of the taxing year 1919 up to July 10, 1919, to pay the Dodge dividend. The contention in the court below was that this dividend was income to the stockholders for the year 1916. On this appeal appellant states that she is content to treat it as income for the year 1917. Her contention now is that the effect of the order of the Wayne circuit court of December 5, 1917, was to distribute among the stockholders one-half of the accumulated surplus of the company, so that it became dividends or income to them as of that date. That result is said to have been effected by the peculiar wording of the 1917 income tax act. 40 Stat. 300–338. That act, as well as the 1918 act (40 Stat. 1057 et seq.), levied a tax upon income *received* during the taxing year, and both provided that income should include dividends. The 1917 act, section 31(a), provided "that the term 'dividends' as used in this title shall be held to mean any distribution made or ordered to be made by a corporation." The 1918 act did not so define dividends, but merely stated that dividends, as other items of gain and income, should be "included in the gross income for the taxable year in which received by the taxpayer." From this changed phraseology in the later act it is argued that Congress had in mind, when the 1917 act was enacted (as indeed when the 1916 act was passed, 39 Stat. 756), a constructive receipt by the taxpayer of dividends, and that there was such a receipt in the instant case, when the order of the circuit court was entered, although the taxpayer did not actually receive the dividend until 1919.

It is not necessary for us to consider the different phraseology in these acts, or whether, and, if so, to what extent, there may be constructive receipt of income under either. It may be assumed that by the earlier act

Congress intended to treat as dividends or as income constructively received any distribution "ordered to be made by a corporation," whether actually received or not—and still that does not help the plaintiff's case. She requires a broader interpretation—one covering a distribution ordered to be made, not by the corporation, but by a trial court, which order was stayed by appeal, and might or might not have become finally effective. The statute, in our opinion, cannot be so construed. The only alternative for an actual distribution which it recognizes is an order made by the corporation. Whether the order of the corporation, acting as it must do through its board of directors, would effect a distribution under all circumstances, we do not decide. It is enough for this case to say that whatever power the board has in that respect is drawn from the statute, and a court of equity, neither under the statute nor apart from it, has any right to declare a dividend on behalf of a corporation. The court, it is true, acting in personam against the several members of a board, may cause them to declare a dividend; but the court itself cannot do so. Certainly an order of court that has been stayed by appeal cannot be treated as having that effect.

Again, in considering when this dividend became income, it is to be remembered that we are dealing with a taxing statute, and, as pointed out in Routzahn v. Mason (6 C. C. A.) 13 F.(2d) 702, dividends are generally held to be income when received. This does not mean that, when ordered to be paid by the corporation, they are not received within the meaning of the earlier acts, but that they cannot be treated as received, under those acts, when ordered paid by a court whose order is subject to and is stayed by an appeal. Nor does it mean that, in adhering to Routzahn v. Mason, we are departing from any pronouncement of the Supreme Court (275 U. S. 175, 48 S. Ct. 50, 72 L. Ed. 223) in reversing the decision of this court in that case. We think it is clear from the reasoning of the Supreme Court, both in that case and in Edwards v. Douglas, 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235, that the Dodge dividend was received in 1919, and was therefore taxable income for that year. This was the view of the Court of Claims in Dodge v. United States, 64 Ct. Cl. 178.

■ It is argued, however, that these undivided profits were taxable against the stockholders for the year 1916, under section 3 of the act of 1916, whether they were distributed or not. We do not think the 1916 act applies to this dividend at all, but, if it did, that

provision of the statute has no relation, in our opinion, to the facts under consideration here. It deals with gains and profits of corporations, "however created or organized, formed or fraudulently availed of" for the purpose of preventing the imposition of taxes "through the medium of permitting such gains and profits to accumulate instead of being divided or distributed." There was no showing in this case that these profits were permitted to accumulate for the purpose of evading taxes. The board of directors contemplated using them for extensions of business, and while the Supreme Court of Michigan held that it would be an abuse of discretion to devote them to that purpose, there was no intimation by that court, nor has there otherwise been one, to the effect that they were being withheld to avoid tax levies.

■ We come, next, to the additional assessment for the year 1917 on the $52,500 received as a dividend on January 18, 1917. The taxpayer claims that the rate applicable was the 1916 rate. The tax was assessed upon a finding by the Commissioner of Internal Revenue that the Ford Motor Company had earned from the beginning of its taxing year, January 1, to January 17, 1917, sufficient profits to pay 68 per cent. of this dividend, and that part of it was allocated to the year 1917 and the balance to the year 1916. The Commissioner's finding of fact as to the company's earnings is not in dispute. It is, of course, not material that the distribution was declared to have been made from profits earned before July 31, 1916, since under the act of 1917, section 31(b), regardless of what is declared to be the fund from which the dividend is paid, it is to be deemed to have been paid from the most recently accumulated undivided profits or surplus. Edwards v. Douglas, supra.

■■ There had been no ascertainment of profits for the first 18 days of the year 1917 at the time this dividend was declared, and it is the contention of appellant that, even though upon the ascertainment of profits at the end of the year, or at the end of the next accounting period, it appeared that profits had been earned up to January 17 from which 68 per cent. of this dividend could be paid, nevertheless that part of it should not have been allocated to 1917, because of an absence of an ascertainment of any profits at that time upon the books of the company. We think the meaning of Edwards v. Douglas and Routzahn v. Mason is that it is not necessary that there be a formal determination or specific allocation of profits on the books of the company, but that a pro

rata share of the entire year's earnings may be treated as representing the earnings for the fraction of the year prior to the payment of the dividend, in the absence of a showing that such share of earnings was not actually accumulated during that period. The income tax return of the Ford Motor Company for the year 1917 was accessible to the Commissioner of Internal Revenue at the time the allocation was made, and it is not contended here that upon the pro rata basis indicated there were not sufficient earnings from January 1 to January 18 to pay 68 per cent. of this dividend.

The judgment is affirmed.