## KALES v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 7692, 7693.

Circuit Court of Appeals, Sixth Circuit.
Jan. 12, 1939.

L. A. Masselink, of Detroit, Mich. (Hal H. Smith, of Detroit, Mich., on the brief), for petitioner.

Berryman Green, of Washington, D. C. (James W. Morris, Sewall Key, and L. W. Post, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

In 1928 and 1930 the petitioner paid out large sums for attorney fees and expenses in connection with suits to recover income taxes paid for the year 1919. The respondent disallowed deductions for such fees and expenses on the ground that they did not constitute "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" within the meaning of § 23 (a) of the Revenue Act of 1928, 26 U.S.C.A. § 23, and determined deficiencies. The Board of Tax Appeals consolidated the petitions for review and in each case sustained the respondent,

the Board member who had conducted the hearings dissenting. By stipulation the petitions to review the Board's decisions are here likewise consolidated.

The petitioner is a woman of considerable means inherited from her father, the securities of her father's estate being distributed in 1916 and its real estate divided in 1927. In addition to some bonds she received in 1916 stocks in forty-six corporations, including 525 shares of Ford Motor Company stock, 938 shares in Ford Motor Company of Canada, Ltd., 5¼ shares of Ford Motor Company of England, Ltd., and 5,000 shares of the Gray Estate Company, which upon its liquidation in 1927 resulted in a payment to her of $2,187,875.-69. The real estate received in 1927 consisted of nine parcels having an appraised value of $1,582,250.

In 1919 Mr. Ford desired to eliminate the minority stockholders of his company, and offered to purchase the petitioner's shares. Her husband, who was with the American Army in France, had advised against the sale. Her attorneys refused to give any advice. Her brothers, who held similar blocks of Ford stock, desired to sell, and urged the petitioner to do likewise. After deliberation she accepted Mr. Ford's offer, receiving for her stock approximately $7,000,000. In making her income tax return for 1919 she, as did other minority stockholders, determined her profits from the sale on the basis of March 1st, 1913, value, which had previously been agreed upon with the Commissioner. In 1925, however, a new Commissioner of Internal Revenue determined a deficiency for the year 1919 on the ground that the basis previously agreed upon for determining profits was too high. Jeopardy assessments were made, and the petitioner paid an additional tax liability for 1919 in the amount of $2,627,309.05. Decision was required as to whether to contest the assessment by petition for review to the Board of Tax Appeals or to pay the tax under protest and sue for refund. The petitioner decided upon the latter course, borrowed the money and paid the tax. Her suit for recovery was successful in the District Court. She likewise prevailed upon appeal in this court (Woodworth, Collector, v. Kales, 6 Cir., 26 F.2d 178), and when the Commissioner failed in his petition to the Supreme Court for a Writ of Certiorari, a refund was made and the petitioner received in 1928 the sum of $3,135,728, of which amount $507,394.50 was interest. In connection

with the suit for the recovery of the tax the petitioner expended $250,840.52 in attorney fees and expenses, including expert witnesses. She deducted this amount in her 1928 return but the respondent disallowed $243,650 of the deduction. This is the first deficiency in controversy.

In 1916 Horace and John Dodge, minority stockholders of the Ford Motor Company, sued the corporation to compel the declaration and distribution of dividends. They were successful, and a decree was entered in 1917 to compel the company to distribute a dividend, of which the petitioner's share was $505,978.88. By reason of appeal (Dodge v. Ford Motor Co., 204 Mich. 459, 170 N.W. 668, 3 A.L.R. 413), the Ford dividends were not actually distributed until 1919. The petitioner conceiving such distribution to be income for the year 1917 on the theory of constructive receipt in that year under the terms of the original decree, filed an amended return for the year 1917 and paid a tax thereon under rates prescribed by the Revenue Act of 1916, 39 Stat. 756. The Bureau of Internal Revenue, claiming the dividend to be taxable income for 1919 when received, determined and assessed a deficiency in the amount of $280,-284.44. The tax was paid in 1923 under protest, and the petitioner sued for refund. The suit terminated against her finally on October 21st, 1929, when her petition for Writ of Certiorari was denied. See Kales v. Woodworth, Collector, D.C. Mich., 20 F.2d 395; Id., 6 Cir., 32 F.2d 37; Id., 280 U.S. 570, 50 S.Ct. 27, 74 L.Ed. 623. In 1930 by reason of this suit she paid attorney fees and costs in the amount of $5,084.53, and claimed it as a deduction in her return for that year. The respondent disallowed it, and determined a deficiency, which is likewise in controversy.

It is conceded that under § 23(a) of the 1928 Act, 26 U.S.C.A. § 23, the fees and expenses paid out by the petitioner in her suit for refund of Federal income taxes were "ordinary and necessary" expenses, but that is not enough. It must also appear that the taxpayer is engaged in business and that the expenses were paid or incurred in such business. Otherwise the section is not applicable, and the expenditures are personal, with deduction prohibited under § 24(a) (1), 26 U.S.C.A. § 24. This leads us to a consideration of what constitutes a trade or business within the purview of § 23, and what constitutes

carrying it on. The two concepts are interwoven, and the question we have presented is not free from doubt. As was said in Monell v. Helvering, Commissioner, 2 Cir., 70 F.2d 631 [page 632], "The point where the one class of expenses [business] merges into the other [personal] is often hard to determine." We give heed, however, to the admonition of the court, "However blurred it may be, it is necessary to keep the distinction which Congress has made."

Congress has not defined the phrase "carrying on any trade or business." Adjudications permit us, however, to eliminate some activities which upon occasion have been urged as being within the purview of the phrasing and so to narrow our question. The concession that the petitioner's expenses were ordinary and necessary eliminates from consideration as controlling on our main question decisions like that in Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505, and Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212, wherein the necessary or ordinary character of the expense was the sole issue. It may also be concluded without discussion that an isolated business transaction is not within the phrase and that this is likewise true of transactions that are occasional rather than regular and continued. Van Wart v. Commissioner, 295 U.S. 112, 55 S.Ct. 660, 79 L.Ed. 1336. We do not in this connection concern ourselves with refined distinctions between the language used in § 23(a) in respect to deductible expenses and that used in § 23(e) in relation to deductible losses, though such distinctions have sometimes been drawn.

In Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas.1912B, 1312, in passing on a case under the corporation excise tax law, the court defined the word "business" as being a very comprehensive term embracing everything about which a person can be employed and as that which occupies the time, attention and labor of men for the purpose of a livelihood or profit. That ordinarily a person is engaged in business when he devotes his time and energy to the buying and selling of securities there can be little doubt, and the Supreme Court has, inferentially at least, recognized it. "Dalton was not regularly engaged in the business of buying and selling corporate stocks." Dalton v. Bowers, 287 U.S. 404,

53 S.Ct. 205, 77 L.Ed. 389. "He was not regularly engaged in endorsing notes, or buying and selling corporate securities." Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397. Cf. Stephenson v. Commissioner, 6 Cir., 101 F.2d 33, by us this term decided. Likewise is there little doubt that one who as a mere investor passively receives his income from corporate stocks and bonds is not carrying on a business even though prudence requires that he change his investments from time to time. Our precise question is whether a taxpayer who while adventuring his own capital in securities yet is actively and continuously occupied in their purchase and sale, converting stock into bonds and bonds into stock, maintains regular office facilities and clerical assistants for that purpose, and is required from time to time to make important decisions involving an informed business judgment with respect to such purchase and sale, may be said to be engaged in carrying on a business.

In Foss v. Commissioner, 1 Cir., 75 F. 2d 326, the court thought that [page 328] "the line [between investors and persons engaged in business], comes between those who take the position of passive investors doing only what is necessary from an investment point of view, and those who associate themselves actively in the enterprises in which they are financially interested and devote a substantial part of their time to that work as a matter of business," and held that the maintenance of an office for that purpose, though not conclusive, is significant. Some such view was likewise expressed in Washburn v. Commissioner, 8 Cir., 51 F.2d 949. There is, perhaps, another line of cleavage between mere investors and those actively in business, and this is not determined by the activity of the taxpayer in the corporate enterprises in which he is interested but rather by the number, continuity and regularity of his transactions and the time, energy and organization devoted to them. Some such line of demarcation is suggested by the reasoning in Dalton v. Bowers, supra, and Burnet v. Clark, supra, and by our decision in Stephenson v. Commissioner, supra.

Where statutory standards are lacking, it may, we think, be here said, as it was in drawing distinctions between what is ordinary and extraordinary in Welch v. Helvering, supra, 54 S.Ct. 9, that "language is to be read in its natural and common meaning," and likewise that "Here, indeed, as so often in other branches of the law, the decisive distinctions are those of degree and not of kind."

The line of demarcation between a passive investor and one whose activities place him in the category of those carrying on business has been clearly recognized by the Board of Tax Appeals, Alice P. Bachofen von Echt, Commissioner, 21 B.T.A. 702, upon rehearing November 8th, 1932, 27 B.T.A. 1419; Caroline T. Kissel v. Commissioner, 15 B.T.A. 1270, April 5th, 1929. In each case the taxpayer was an investor, but an active one. Of Mrs. von Echt the Board said: "We are convinced that the petitioner was at all times from the creation of the several trusts here in question * * * in complete ownership and control of her properties and that her activities respecting them, especially during 1921, the year in question, when she was engaged in reestablishing her trusts, in substituting investments for those relinquished to her by the Custodian, and in investing accumulations of such securities during the period of seizure by the said Custodian, engaged in a trade or business within the meaning of the Act." Of Caroline T. Kissel the Board said: "The record shows that petitioner is a woman of substantial means and that she invests rather heavily in stocks, bonds, and other securities, and in real estate, and that her son is employed regularly to manage her affairs and maintains an office and employs two assistants for that purpose. We are satisfied from the evidence, and the testimony of record, that substantially all of the alleged errors or inaccuracies, out of which the proposed additional assessment arose, which attorneys were employed to defend, were not mere isolated personal transactions, but were connected with the petitioner's trade or business within the meaning of section 214(a) (1)."

It has long been a recognized rule of statutory construction that the re-enactment of a statute by Congress in identical terms and failure to amend it in the face of consistent judicial and administrative construction is persuasive of a legislative recognition and approval of the statute as thus construed. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; Helvering v. Bliss, 293 U.S. 144, 151, 55 S.Ct. 17, 79 L.Ed. 246, 97 A.L.R. 207. A long series of Treasury decisions were promulgated before the passage of the 1928 Act

defining "business" with substantially the breadth given to it in Flint v. Tracy Stone Co., supra, yet § 23 of that Act re-enacted similar provisions of § 214 of the Acts of 1918, 1921, 1924 and 1926, 40 Stat. 1066, 42 Stat. 239, 43 Stat. 269, 44 Stat. 26. More important still is the fact that while the Kissel Case was decided by the Board of Tax Appeals in 1929, and the von Echt Case upon rehearing in 1932, § 23(a) was retained without change in the 1932, 1934 and 1936 Acts, 26 U.S.C.A. § 23. We are asked by respondent's counsel to view the conflict between the Board's decision in the instant case and those in the Kissel, von Echt and other cases as merely indicating "some inconsistency and vacillation" rather than as departure from a hitherto consistently maintained construction. But that the respondent finally acquiesced in the rule of the von Echt and Kissel Cases is indicated by the lack of any citation on appeal, and in the formal response of the Bureau to the inquiry of the Committee of Banking Institutions on Taxation (reported in Standard Federal Tax Service 1934, Vol. 3, § 6035) in which it was said: "You direct attention to the reconsideration by the United States Board of Tax Appeals of the case of Alice P. Bachofen von Echt v. Commissioner, 21 B.T.A. 702, reference to which is made in the letter addressed to you on August 19th, 1933. You are advised that the Bureau has recently adopted the policy of allowing as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year with respect to the management, protection and handling of properties producing taxable income." The situation here outlined calls for the application of the rule of Brewster v. Gage, supra.

Concluding that there are cases where the activities of taxpayers are such that though they invest but their own capital they are none the less carrying on a business, we think that Mrs. Kales' activities bring her deductions within the permissible scope of the statute. While the petitioner's endeavor to make proof of her activities during the earlier years of the period 1916 to 1930 was somewhat curtailed by the view of the examining board member that, since the questions related to expenses for the years 1928 and 1930, activities of those years only were important, there is sufficient evidence in the record, however, and quite enough likewise in the evidentiary findings of the

Board, to show her general activity in relation to her affairs during the entire period. She had an arrangement with her lawyers by which her books were kept by the firm's head bookkeeper, first with one assistant and later with two. For this service she paid the firm $3,000 a year. She visited the office set aside for her to confer with the bookkeeper three or four times a week, signed all checks personally except when absent from the city, and made all decisions affecting either her sale or purchase of securities. During the period 1916 to 1930 she purchased bonds in the aggregate amount of $11,665,-073.97. During the same period bonds that were sold by her or which matured aggregated over $3,000,000. Her stock purchases during the period were approximately half a million dollars, while those sold, including the Ford shares, aggregated nearly nine and a half million dollars. During the greater portion of the period she was engaged in the shifting of her investments from stocks to bonds. The very important decisions she was required to make upon the sale of the Ford stock, the payment of the jeopardy assessment and suit to refund, the borrowing of over $2,500,000 for that purpose, and upon entering into a contract with the City of Detroit with respect to time condemnation payments for the taking of her property, were all made upon her own responsibility. It would be impossible in the brief space of an opinion and serve no useful purpose to detail all her activities. It is sufficient to say that they were extensive, varied, continuous and regular, and in no substantial manner to be distinguished from the activities of the taxpayer in the Kissel and von Echt Cases, and in that of Bula E. Croker v. Commissioner, 27 B.T.A. 588, cited by the dissenting Board member.

The conclusion of the Board that the subject matter of the refund suit, being income realized in 1919, had no connection whatever with any business that may have been carried on by the petitioner in the years 1928 and 1930, must, it seems to us, be rejected. If its view were to be generally applied it would mean that business expenses for rent, services or the like, could never be deducted, no matter how ordinary or how necessary they might be to the carrying on of a business unless they were paid for within the taxable year within which the use or service was required by the business

of the taxpayer. This clearly is not the law. Likewise must we reject the conclusion that if the taxpayer carried on a business the fees in question were not paid in connection with it, on the authority of the Kornhauser Case, supra. The cost of the protection and recovery of income when income results in whole or in part from business activities is a business expense within the meaning of the Act.

The decisions of the Board of Tax Appeals are set aside.