### EAKINS v. UNITED STATES.

District Court, E. D. New York. January 3, 1930.

No. 2876.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Theodore Kiendl, of New York City, of counsel), for petitioner.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Albert D. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Eldon O. Hanson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

GALSTON, District Judge. The petitioner brings this action for the recovery of federal income taxes for the years 1917 and 1918, in the total amount of $56,336.33, with interest, on the claim that the money was illegally collected from her.

In her income tax return for the year 1917, the petitioner included, as part of her gross income, salary in the amount of $155,872.06, received from J. S. & W. R. Eakins, Inc.; for the year 1918 she reported salary in the amount of $129,153.54, received from the same corporation.

An audit of the income and excess profits tax returns of that corporation, made by the Treasury Department, resulted in disallowance of those alleged salary payments, as an expense of doing business. In consequence the corporation was assessed additional taxes in the amount of $57,673.20, with interest of $2,000 for 1917, and $79,462.23, with interest of $3,000 for 1918. Thereupon the petitioner paid these amounts to the corporation to enable the corporation to pay to the government, as it did, the additional taxes thus assessed.

The petitioner contends that in 1917 she and the other officers of the corporation, who were also all of its stockholders, agreed to distribute the earnings of the company to themselves as salaries in proportion to their stock holdings. However, in view of the imposition of new war and excess profits taxes and the possibility that the United States government might assess additional taxes against the cor-

poration, the parties undertook to refund to the corporation such sums, in the event that they were not allowed as deductions by the Treasury Department. Subsequently, on May 14, 1921, and May 28, 1923, written contracts were entered into by these stockholders and officers, wherein it was agreed that, should additional taxes be levied against the corporation for the calendar years 1917, 1918, or 1919, the four stockholders would refund such additional payments to the corporation each in the ratio of his stock holdings.

The petitioner received money which she thought was income, and paid taxes on it. Thereafter, by virtue of her contractual obligation, she was compelled to repay the money, and so demands a repayment of the taxes. That position seems to be equitable. On the other hand, the defendant, not content with having received the taxes from the corporation, seeks also to retain the taxes paid by the petitioner. That position does not seem to be equitable. Does the law support the equities involved?

The uncontradicted testimony of the officers is that petitioner orally agreed, prior to the written contracts of 1921 and 1923, to make restitution to the corporation in the event that additional taxes were assessed against the corporation on account of the disallowance of salary as a deduction from its gross income for those years. Now, although the additional taxes were not determined until 1921, nevertheless, under the authorities, they accrued in 1917 and 1918, respectively. United States v. Anderson (United States v. Yale & Towne Mfg. Co.) 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; American National Company v. U. S., 274 U. S. 99, 47 S. Ct. 520, 71 L. Ed. 946.

Moreover, under the laws of the state of New York, to the extent that distributions to stockholders—and certainly the distribution to the petitioner was a distribution to a stockholder—impairs the capital of the corporation, the corporation has a right to reclaim. In consequence, petitioner took her share of the profits with the knowledge that she might later be required to return the sum if such distribution impaired its capital. Cottrell v. Albany Card & Paper Mfg. Co., 142 App. Div. 148, 126 N. Y. S. 1070. Thus it follows that the petitioner, though she obtained the legal title to certain funds in 1917 and in 1918, with unreserved power to dispose of those funds, nevertheless received them impressed with the obligation to make restitution to the corporation to the extent of additional assessed taxes or impairment of capi-

tal resulting from such distribution. The petitioner very properly, and indeed as a matter of necessity, included the moneys thus received in her income tax returns, but, when it became apparent that she had to restore the funds to the corporation, they could no longer be regarded as having been income at any time.

The government really is endeavoring to collect substantially the same tax from two different taxpayers on the same amount of money, although only one of those parties in the last analysis received such money as income or profits. In the hands of the petitioner, as received from the corporation, it had the guise of income, but, when stripped of that guise, it appears that all the petitioner received was a loan or advance of the use of the money.

In Ford v. Nauts (D. C.) 25 F.(2d) 1015, the court said: "The only question, therefore, is whether actually the dividends upon the securities in question were lawfully part of the income of Mr. Ford, the plaintiff, when he returned them as such. This question is, we think, easily answered. The law does not contemplate that that is income of the taxpayer which belongs to another, but is appropriated by the individual making the return. That is the case here, and upon these principles we think that judgment on this record should run for the plaintiff." See, also, Ansco Photo Products v. Clark (D. C.) 34 F. (2d) 568.

It is also contended by the petitioner that distributions made to the petitioner in 1917 and 1918, which were not returned to the corporation in 1924, are taxable to her in the years in which they were credited rather than in the years in which they were withdrawn.

The government contends that the payments to the petitioner were for salary, but obviously one must get beyond the term itself. She performed no services for the corporation and earned no salary. Whatever the payments may have been called in the books of the corporation is immaterial. The facts control. It was because the petitioner performed no services and earned nothing that the corporation was disallowed as deductions the moneys paid to the petitioner as salaries. For the government to contend on the one hand that the corporation should not be allowed the deduction because the payments were not salaries, and on the other hand to insist that what she received should be taxable in the years received because it was salary, is to maintain an utterly inconsistent and contradictory position.

On December 30, 1916, a certain amount of money was placed at the disposal of the petitioner. She could have withdrawn the funds that day or the next day. The amount so credited was, therefore, constructively received by her in 1916, and is taxable income to the petitioner only in the year 1916. Appeal of Brander, 3 B. T. A. 231; Brooks v. Commissioner of Internal Revenue, 12 B. T. A. 31; Treasury Department Regulations 74, art. 332. The same principle holds true as to the amount credited on the books of the corporation to the petitioner on December 30, 1918.

■ Finally there is to be considered the technical objection by the government to the failure to file a claim for refund for the taxes paid for the year 1917. The petitioner filed two claims for refund of 1917 taxes, which are substantially identical. On February 18, 1923, following the receipt of a letter from the Commissioner of Internal Revenue dated February 10, 1923, in which the Commissioner suggested that a claim be filed to enable the taxpayer to obtain the benefit of certain adjustments set forth in Agent Wilmer's report dated December 11, 1922, the petitioner filed her claim. Following the filing of the claim it appeared that the suggestion of the Revenue Agent was not adopted by the Department. Thereupon the petitioner filed a second claim for refund on March 15, 1923. In each claim the petitioner requested a refund of $22,613.18. The report of Revenue Agent Wilmer was incorporated in each claim by reference; and a copy of it was attached to and made part of the first filed claim.

The government admits that the first, but denies that the second, claim was filed. The proof as to the filing of the claim is not all that one might desire. J. Barkley Eakins, after having had presented to him an alleged copy of the second claim, testified that he had placed on the copy in red typewriting the legend: "A copy of this was filed with the Collector of Internal Revenue at Brooklyn, New York, on March 15, 1923." The most that he states is that he would not have placed the legend on the copy unless he had filed the claim. As against this testimony the government produced witnesses who testified that they found no record in the government's files that the claim had been filed.

Both parties have presented requests for special findings of fact and conclusions of law, and accordingly I find:

1. Amelia A. Eakins, the petitioner, is, and, at all the times material herein, was a citizen of the United States and a resident of the Eastern Federal Judicial District of New York, and of the First District of New York, as designated for the purpose of the collection of United States internal revenue.

2. The taxes in controversy in this suit were collected in part on June 7, 1918, by Henry P. Keith, then collector of internal revenue for the First District of New York, and in part on December 3, 1919, by Bertram Gardner, then collector of internal revenue for the First District of New York, but neither the said Henry P. Keith nor Bertram Gardner were in office as collector of internal revenue at the time of the commencement of this action or at any time thereafter.

3. The petitioner, now 82 years old, is the widow of John S. Eakins, the founder of J. S. & W. R. Eakins, Inc., a corporation organized under the laws of the state of New York in 1909, and engaged in the business of manufacturing colors, with its principal office and place of business in Brooklyn, N. Y. The stock of the corporation was and is closely held by the Eakins family. The corporation upon its organization took over the assets of a partnership and issued therefor $150,000 face value of debenture bonds and $50,000 par value of common stock consisting of 500 shares. The bonds were all issued to John S. Eakins, and the stock was issued 350 shares to John S. Eakins, 50 shares to J. Barkley Eakins, his son, 50 shares to Harold Eakins, his nephew, and 50 shares to Frederick J. Van Vranken, his son-in-law. John S. Eakins died in 1915. Shortly before his death he had transferred 1 share to the petitioner, and by his will he left the beneficial interest in the remaining 349 shares to the petitioner for her life.

4. During the years 1916, 1917, and 1918, and prior thereto, the officers and directors of J. S. & W. R. Eakins, Inc., were J. Barkley Eakins, president, Harold Eakins, vice president, Amelia A. Eakins, treasurer, and Frederick J. Van Vranken, secretary. The business of the corporation was carried on by the three men, the petitioner taking no active part in the operation of the business and performing no services for the corporation. The duties of treasurer were performed by Harold Eakins, the vice president.

5. The corporation has regularly kept its books and filed its income tax returns on the calendar year and accrual basis. The petitioner has regularly kept her accounts and reported her income to the federal government on the cash receipts and disbursement basis.

6. From the time of the organization of the corporation it had continuously followed

the practice of distributing semiannually to its officers all of the current profits of the business as salaries. These distributions were made by crediting on the books of the corporation to the individual account of each officer at the end of June and December of each year a share of the profits, not in proportion to services rendered to the corporation, but in approximate proportion to the relative shareholdings of each.

7. Since its organization the corporation had uniformly deducted these salary distributions to its officers from its income in its annual franchise and income tax returns as expenses, and the Treasury Department made no objection to this practice until 1921, when the audit of the corporation's returns for the year 1917 was made.

8. In arriving at the amount of current profits to be distributed to the officers, provision was made for the estimated federal corporate taxes and for other liabilities, but no provision was ever made, nor was any reserve ever set up on the books of the corporation, for any additional corporate taxes which might arise from the disallowance of the salary deductions taken by the corporation in its annual returns.

9. At the time the salaries were credited to the account of each officer, it was the practice to notify each officer that such credits had been made, and it was understood among them that each officer could withdraw the amount so credited at any time without restriction or limitation.

10. In 1917 and 1918, the corporation continued to follow the same practice of distributing the profits as salaries and crediting the amounts semiannually on the books of the corporation to the accounts of the several officers, including the petitioner. During those years the corporation continued to deduct the amount of such distributions as salaries in its income tax returns, without making any provision on its books or otherwise for any additional taxes which might be assessed against it on account of the disallowance of such deductions. Realizing that the salary deductions might in part be disallowed, and that additional taxes might be assessed against the corporation, the officers, who were also the directors of the corporation, orally agreed among themselves at the time of the distributions in 1917 and in 1918 that, if any of the salaries should be disallowed as a deduction to the corporation, the officer who had received such salary would refund to the corporation the amount necessary to pay the additional tax which might be assessed because of such disallowance. The petitioner was a party to that agreement, and she took the distributions of 1917 and 1918 subject thereto.

11. In accordance with the aforesaid practice, the following amounts were credited to the petitioner's account on the books of the corporation as salary on the dates indicated below:

| | |
|---|---|
| December 30, 1916 | $85,844 34 |
| June 29, 1917 | 69,827 72 |
| December 31, 1917 | 63,778 72 |
| June 30, 1918 | 65,374 82 |
| December 31, 1918 | 65,943 12 |

At the time each of the above credits was made, J. Barkley Eakins notified the petitioner thereof, and it was understood that she had the unqualified right to withdraw the whole amount thereof without any restriction or limitation, except that the amounts credited to her in 1917 and 1918 were taken subject to the aforesaid agreement to refund to the corporation the amount necessary to pay any additional taxes assessed against the corporation because of the disallowance of those amounts as salary deductions to the corporation.

12. When the Treasury Department in 1921 audited the income and excess profits tax returns filed by the corporation for the years 1917 and 1918, it disallowed as a deduction the amounts distributed to the petitioner in 1917 and 1918 as salary, but allowed as deductions the salaries received by the three other officers.

13. The additional taxes ultimately assessed against the corporation as a result of the disallowance of the distributions to the petitioner as deductions by the corporation were $57,673.20, with $2,000 interest, for the year 1917 and $79,462.23, with $3,000 interest, for the year 1918.

14. Following the assessment of the aforesaid additional federal income and excess profits taxes, the petitioner, by reason of her oral undertaking made at the time of the distributions in 1917 and 1918, as set forth in paragraph 10 supra, and through the means of a fund known as the custodian fund, paid back to the corporation on May 7, 1924, the amount of these additional taxes, and the corporation in turn paid these taxes to the government.

15. The books of the corporation, taking the item "Processes" at $50,000 as it appeared on the books, show the following amounts as surplus after the distribution of profits to the stockholders on the dates indicated below:

| | |
|---|---|
| June 30, 1917 | $33,036 09 |
| December 31, 1917 | 37,196 81 |
| June 30, 1918 | 38,477 02 |
| December 31, 1918 | 39,933 78 |

16. The item "Processes" appearing as an asset on the books of the corporation from the time of its organization down through the years 1917 and 1918 and subsequent years in the amount of $50,000 was in fact an asset having a value at no time in excess of $1,000.

17. The following additional tax liabilities accrued during the years 1917 and 1918; the corporation never set up on its books any reserve to provide for the payment of these items:

Additional federal income and excess profits taxes for the year 1917................. $57,673 20
Additional New York state franchise taxes for the year 1917............................ 5,295 90
Additional federal and excess profits taxes for the year 1918............................. 79,462 23
Additional New York state franchise taxes for the year 1918............................ 5,329 02

18. When the actual value of the processes and the liability of the corporation to pay additional federal income and New York state franchise taxes for the years 1917 and 1918 are taken into account, the following deficit or impairment of capital at the end of each year existed:

December 31, 1917........................... $ 74,862 29
December 31, 1918........................... 156,916 57

19. The distributions to the petitioner during the years 1917 and 1918 were paid out of and resulted in an impairment of the capital of the corporation, at least to the extent of $59,673.20 for the year 1917, and $82,462.23 for the year 1918.

20. On May 7, 1924, the date when the additional taxes for the years 1917 and 1918 were paid, the impairment of capital resulting from the failure of the corporation to provide for the additional taxes had not been made up. The surplus and undivided profits appearing on the books on that date was $60,022.45. When that sum is reduced by the overvaluation of processes in the amount of $49,000, and the unrecorded but accrued liabilities for additional New York state franchise taxes and federal income taxes for the years 1917 to 1923, inclusive, due but unpaid, in the amounts of $30,659.86 and $256,528.86, respectively, the result is an actual deficit of $276,188.72.

21. During the year 1917, there was credited to the account of the petitioner on the books of the corporation the sum of $133,806.44. She actually withdrew in 1917 the sum of $127,844.34. During the year 1918, there was credited to the account of petitioner on the books of the corporation the sum of $131,317.94. She actually withdrew in 1918 the sum of $133,606.44.

22. The amount of $85,844.34, credited to petitioner's account on December 30, 1916, was withdrawn by her in 1917 in six installments, the last of which was on June 28, 1917. On that date the total prorated corporate earnings for the year 1917 was $35,768.86. The difference between that sum and $85,844.34, to wit, $50,075.48, was paid by the corporation out of earnings accumulated prior to January 1, 1917.

23. In her income tax return for the year 1917, the petitioner included, as part of her gross income, salary in the amount of $155,672.06, representing the total of the sums $85,844.34, the amount credited to her on December 30, 1916, and $69,827.72, the amount credited to her on June 29, 1917. In her income tax return for the year 1918, she reported salary in the amount of $129,153.54, representing the total of the sums $63,778.72, the amount credited to her on December 31, 1917, and $65,374.82, the amount credited to her on June 30, 1918. The petitioner originally paid income taxes in the amount of $55,459.56 for the year 1917, and $78,735.62 for the year 1918. Subsequently she paid an additional tax for the year 1917 in the amount of $140.90.

24. On December 11, 1921, upon an audit of the petitioner's return for the year 1917, Internal Revenue Agent J. C. Wilmer rendered a report, recommending, among other things, that the amounts credited to petitioner's account be treated as dividends constructively received in the year in which they were so credited and at the same time stating that it was the petitioner's contention that the additional taxes assessed against the corporation, which she had agreed to pay, should be excluded from her taxable income. Revenue Agent Wilmer did not undertake to pass on this latter question, but referred it in his report to the Treasury Department for decision saying: "I can find no ruling on this and have therefore been unable to comply with this contention other than on the broad principles of equity. This, I believe, is in the purview of the Department rather than the examining officer."

25. On February 10, 1923, the Commissioner of Internal Revenue wrote the petitioner referring to Agent Wilmer's report of December 11, 1922, suggesting that the petitioner file a claim for refund, and saying that the claim when received would be considered in connection with the audit of Agent Wilmer's report. Responsive to this suggestion, on February 16, 1923, the petitioner, in accordance with the statute and the regulations of the Treasury Department, filed a claim for refund on the appropriate Treasury Depart-

ment form wherein refund was requested in accordance with Agent Wilmer's report of December 11, 1922, and a copy of such field report was attached to the claim for refund. In the claim the petitioner requested a refund of $22,613.18 or such greater amount as was legally refundable, and the claim complied with all the necessary formalities as to execution, etc.

26. On March 6, 1923, the Commissioner of Internal Revenue wrote the petitioner advising her that the report of Agent Wilmer had been reversed in regard to the treatment of the so-called salary received from J. S. & W. R. Eakins, Inc., and that her tax liability was therefore unchanged. Following the receipt of this letter, the petitioner, on March 15, 1923, filed a second claim for refund of 1917 taxes requesting refund in accordance with Agent Wilmer's report of December 11, 1922, and adding: "Due also to adjustment of J. S. & W. R. Eakins taxes in accordance to Supervising Revenue Agent's report for that corporation dated August 11, 1921." This second claim for refund asked refund in the amount of $22,613.18, or such greater amount as was legally refundable.

27. Following the receipt of advice from the Treasury Department that petitioner's claim for assessment on the basis of constructive receipt made in accordance with Agent Wilmer's report had been disallowed, petitioner, in a letter to the Commissioner of Internal Revenue, dated September 5, 1923, made the alternative claim that the amount of $85,844.34 credited to her account on December 30, 1916, but withdrawn by her in 1917, should be taxed at 1916 rates.

28. In a letter to the petitioner dated May 21, 1925, Deputy Commissioner J. C. Bright, specifically referring to petitioner's claim for refund for 1917, allowed the petitioner's claim that the distributions be treated as dividends, but denied her claim that such distributions be treated as income constructively received in the year in which they were credited to her account; also denied her claim that her taxable income be reduced by the amount of taxes assessed against the corporation which she repaid, and also denied her claim that the amount of $85,844.34 credited to her in 1916 be taxed at 1916 rates. In that letter no mention was made of any defect in petitioner's claim for refund.

29. On January 23, 1924, petitioner duly filed a claim for refund for the year 1918 setting forth the several grounds for refund relied upon in this suit, and that claim was rejected by the Commissioner of Internal Revenue in a letter to the petitioner dated May 21, 1925.

30. For the year 1917, the petitioner paid income taxes in the amount of $55,600.46, of which $24,560.33 was subsequently refunded; the net tax paid being $31,040.13. For the year 1918, the petitioner paid income taxes in the amount of $78,735.62, of which $14,039.30 was subsequently refunded; the net tax paid being $64,696.32.

31. The correct tax liability of the petitioner for the year 1917 is $15,937.76, and the petitioner is entitled to a refund for that year in the sum of $15,102.37, with interest thereon at 6 per cent. per annum from June 7, 1918.

32. The correct tax liability of the petitioner for the year 1918 is $21,462.36, and the petitioner is entitled to a refund for that year in the sum of $43,233.96, with interest thereon at 6 per cent. per annum from March 12, 1919.

### Conclusions of Law.

1. (a) Of the amounts which the petitioner received as distributions from J. S. & W. R. Eakins, Inc., during the years 1917 and 1918, the amount of $59,673.20 received in 1917, and the amount of $82,462.23 received in 1918, both of which were repaid by the petitioner to the corporation on May 7, 1924, did not constitute taxable income to the petitioner and should be excluded from the petitioner's income for 1917 and 1918, in that such amounts when distributed were taken subject to an agreement made by the petitioner to repay to the corporation in the event any additional taxes were assessed against the corporation.

(b) Of the amounts which the petitioner received as distributions from J. S. & W. R. Eakins, Inc., during the years 1917 and 1918, the amount of $59,673.20 received in 1917 and the amount of $82,462.23 received in 1918, both of which were repaid by the petitioner to the corporation on May 7, 1924, did not constitute income to the petitioner and should be excluded from the petitioner's income for 1917 and 1918, in that additional income taxes against the corporation for 1917 and 1918 had accrued at the time the said distributions were made, and consequently such distributions constituted an impairment of capital and were taken subject to an obligation to repay and so were not subject to tax.

2. The amount of $85,844.34 credited to the petitioner on the books of the corporation on December 30, 1916, was constructively received by her in 1916 and is taxable to her as 1916 income and not as 1917 income.

3. The amounts credited to the petitioner's account on the books of the corporation

during the years 1917 and 1918, to the extent that they constitute taxable income, were constructively received by her in the years when credited.

4. Of the amount of $133,606.44 credited to the petitioner's account on the books of the corporation during the year 1917, only $73,933.24 is taxable income for 1917.

5. Of the amount of $131,317.94 credited to the petitioner's account on the books of the corporation during the year 1918, only $48,855.71 is taxable income for 1918.

Judgment may be entered accordingly.