## UNION GUARDIAN TRUST CO. v. BURNET, Commissioner of Internal Revenue.

### No. 5602.

Court of Appeals of the District of Columbia.

Argued Feb. 8, 9, 1933.

Decided April 3, 1933.

Rehearing Denied April 21, 1933.

Frederick L. Pearce and Lyman L. Long, both of Washington, D. C., and Arnold R. Baar and Arthur R. Foss, both of Chicago, Ill., for appellant.

G. A. Youngquist, Sewall Key, J. P. Jackson, John MacC. Hudson, C. M. Charest, and Hartford Allen, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

In 1916 the taxpayer and a real estate corporation doing business in Detroit entered into a contract, as the result of which the taxpayer undertook to manage a separate department of the corporation for a term of five years in consideration of a percentage of the profits. The contract provided that it might be, as it was, extended one additional year, and this made it terminate in 1922. The contract provided that the corporation should organize a separate department to be called the "City Real Estate Department." The purpose was to purchase and sell city (rather than country) real estate in the state of Michigan. The corporation agreed to furnish an initial capital of $100,000 for the operation of the department and, as needed, additional capital to the amount of $100,000. The contract provided that the taxpayer should be, as he was, elected vice president and assistant secretary of the corporation, and should hold this office for the period of the contract, and further that the taxpayer should receive and accept "in full as a salary for all his services" a sum "equivalent to 50

per cent. of the first $10,000, 40 per cent. of the second $10,000, 25 per cent. of the third $10,000 and 15 per cent. of all over $30,000 of the annual net profits" earned by the new department of the corporation during the period of the contract, and that the taxpayer should also be responsible for and pay any loss during any of the contract years on the same basis and in the same proportion, and that "such earnings and losses, if any, shall be adjusted, set up and debited or credited to him on the books of said Department at the end of each year of the period of said contract, but the final settlement and payment thereof to be made only at the termination of this contract." All property acquired by the corporation was to be taken in its name.

At the termination of the contract, or any extension thereof, the assets were to be distributed: First, all liabilities incurred on behalf of the corporation (except mortgages on account of purchase of property) should be paid; second, the corporation should withdraw its first $100,000 invested, without interest, and any additional sum advanced, together with interest at 6 per cent. When this was done and the expenses of conducting the department deducted, the taxpayer should receive such portion of the residue of the remaining assets as was equivalent in value of his agreed share of the net profits. Provision was made in the contract for the contingency of his death or illness during the period of the contract by the payment to him, or to his estate, of an amount equal to his share of the net profits as of the last inventory date, and thereafter at the rate of $10,000 per year from the inventory date to the date of death or disability.

In 1921 the taxpayer received property of the value of $9,000 on account of the profits to which he was entitled under the agreement, which he returned for that year. Upon the conclusion of the contract in 1922, he received $50,420.76 as the balance he was entitled to, and this amount he returned for that year as income from salary. For the period of the contract and until 1921 the taxpayer returned in none of those years any portion of the profits of the business. In his return for 1922 he took credit for a sum paid by him on account of taxes to the Canadian government, and in July 1927, on the audit of his return for 1922, this sum paid the Canadian government was disallowed, and as a result a deficiency in tax was found.

No point is now made of the correctness of the Commissioner's decision in disallowing the claim on account of Canadian taxes, but

on behalf of the taxpayer it is contended that the profits received by the taxpayer in 1922 were mistakenly included by him in that year —as salary—because such profits were received in prior years and were income for each prior year to the extent earned in that year and should have been so returned. The basis of this claim is that taxpayer was not an employee or officer of the corporation, but that he and it were engaged in a joint enterprise or joint. adventure and that resulting from this his share of the profits was derived or received annually as profits earned in the business. The Commissioner's position is that taxpayer was an employee of the corporation, and that the profits distributed to him in 1922 were payment for his services and income received and taxable in that year. The taxpayer was on the cash basis of accounting.

From what, has already been said, it will be seen that it is not denied that the sum in dispute was taxable income, or that it was received in 1922, and equally that, if the taxpayer's position is correct, the government will have lost its rights.

The applicable statute is section 213, Revenue Act of 1921, 42 Stat. 227,.237. Its provisions are as follows: "The term 'gross income'—(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items * * * shall be included in the gross income for the taxable year in which received by the taxpayer. * * *"

At the hearing before the Tax Board it was urged on behalf of the taxpayer that the contract created a partnership, and in its opinion the Board said, if this were true, the taxpayer should prevail. But the Board found that under the Michigan law a corporation may not be a member of a partnership, and held that this was sufficient to defeat the taxpayer's claim, though they also said that to treat the contract as one of partnership would be to disregard its express terms. In the argument before us on the appeal from the Board, counsel for the taxpayer abandoned the idea of a partnership, but insisted that the contract itself created a joint

enterprise, as to which the parties were joint adventurers, and so now insist that in that view the share of each of the coadventurers should and must be determined annually and the gains or losses so returned.

Perhaps there may be found decisions of the courts which hold that syndicate or pool profits should be reported annually, though we can find nothing in the acts or in the regulations (at least prior to 1932) which would make that rule apply to those cases in which the gains are not subject to withdrawal. In . those cases in which they are, the annual accounting of course applies, and is not changed by subsequent agreements to leave the gains in the pool, because this would be to open the door to fraudulent practices resulting in the selection of the year for taxation. As was said by the Court of Appeals for the Tenth Circuit in Newman v. Commissioner, 41 F. (2d) 743: "Annual accounting periods must be adhered to and arbitrary shifting of income from one year to another must be prevented in order to enable Congress to successfully adjust the rates to the needs of the Government. * * * We are of the opinion that a taxpayer cannot legally avoid such requirements by the simple expedient of an agreement with friends or associates not to sell until all agree and thereby select to his own liking the year in which his tax liability shall arise."

Or, as was said by the Court of Appeals in the Fourth Circuit, in Wright v. Commissioner, 50 F.(2d) 727, 729: "Were such an agreement held to fix the date of the taxation of profits in a transaction of this kind the government would be at the mercy of the purchaser and seller, * * * and if the taxing date could be postponed for five years by such a contract, * * * it could be postponed for twenty years."

The above cases and those of like import all depend upon the peculiar facts to be found in each of them and proceed upon the general principle laid down by Mr. Justice Stone in Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 152, 75 L. Ed. 383, where he said: "It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals." And so in those cases in which, by some artificial means, regularity of ascertainment and assessment of taxes is sought to be avoided by agreement postponing the period of profit realization, the courts have not hesitated to refuse to give effect to . such agreements, and so in the Newman Case, supra, the parties had entered into an agree-

ment not to sell certain stock within a definite period. The court there refused to give effect to this agreement on the theory that the taxpayer had a right to sell a beneficial ownership in his stock, and that by this means its fair market value could be ascertained, as of the date of acquisition, for taxation purposes. And so also in the Wright Case, supra, the taxpayer, by virtue of an agreement, placed in trust stock which he then received on the sale of certain mill properties in which he had an interest, as a result of which he claimed he did not at that time receive any gain or profit that was taxable, but the court held that the fair market value of what he received was easily ascertainable and had been ascertained by the Commissioner, and therefore the agreement by which it was placed in trust to abide a subsequent event was ineffective to delay the payment of the tax to a later year.

We do not think this case is controlled by these or similar decisions. Undoubtedly the rule is that income earned in a particular year and allocated to a taxpayer, and which he has right to withdraw, is subject to the tax for that year whether he actually receives it or not, and so the statute makes the distributive share of the profits of a partnership returnable as though received by the partners, even though they are not distributed. But that is not this case. Here the parties intended by the contract to create the relationship of employer and employee, and the provision in the contract with relation to a division of the losses, so far as taxation is concerned, is of no consequence. The taxpayer, in order that he might perform the service of his employment, was elected an officer of the corporation. The corporation was the owner of the business. It supplied the capital and retained title to the property acquired. It provided the funds for current expenses, and was solely liable to third persons on the contract made in its behalf by the taxpayer. It is true the profits and losses were computed annually, but this was merely a bookkeeping arrangement, for the contract itself forbade their withdrawal until the termination of the contract.

The taxpayer had earned nothing, so far as taxation was concerned, at the end of the first year or at the end of any subsequent year until the final computation was made. No income had accrued to him which was subject to his order or to his demand. His compensation was dependent upon the successful outcome of the enterprise. It was contingent until the enterprise was complete, and the pe-

riod was the termination of the contract. There is not now, and never was, a suggestion that the contract was made for the purpose of postponing taxation. It was made with the intention of conducting a certain line of business for a definite period of time, and the taxpayer's reward was dependent upon ultimate success, and the ascertainment of that success, as we have seen, was postponed by agreement of the parties for their own protection to the end of the period. It was not wholly unlike that class of contracts known to the Revenue Department as "long-term contracts," as to which article 36 (b) of Regulations 62 provides that income therefrom may be reported in the year of completion. In 1922 the contract was terminated and the profits divided, and whether the amount then received by the taxpayer be described as the increment of a joint enterprise, or, as the parties themselves designated it, salary for services performed, seems to us of no consequence. (What might be the effect under the law of 1932 (Revenue Act) § 1111 (a) (3), 26 USCA § 4111 (a) (3), it is not necessary to decide.) It was earned in 1922, because no part thereof was subject to the demand of the taxpayer prior to that time. It was paid in that year, and his return of it under the appropriate form of the tax return for that year was in our opinion altogether correct.

For these reasons the decision of the Board of Tax Appeals is affirmed.

Affirmed.