## LOOSE v. UNITED STATES. *
### No. 9948.

Circuit Court of Appeals, Eighth Circuit.
Nov. 17, 1934.

*Rehearing denied Jan. 7, 1935.

S. Wallace Dempsey, of Washington, D. C. (Alfred M. Seddon, of Kansas City, Mo., on the brief), for appellant.

Milford S. Zimmerman, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before STONE, Circuit Judge, and JOYCE and BELL, District Judges.

JOYCE, District Judge.

Appellant, plaintiff below, is the executrix of the estate of her husband, Jacob L. Loose, who died on September 18, 1923. At his death and for some years prior thereto Loose owned certain coupon-bearing bonds. Coupons in the amount of $34,687.50 matured between December 31, 1922, and September 18, 1923, and had not been clipped and cashed at the time of his death. Plaintiff as executrix clipped and cashed them after his death. Plaintiff did not report these coupons as income to the deceased for the year 1923, but did report them as assets of Loose's estate subject to the federal estate tax. The Commissioner determined that the proceeds were a part of the income of deceased and subject to taxation as such. The

Commissioner's finding was upheld by the Board of Tax Appeals in 15 B. T. A. 169. Plaintiff then paid the tax and accrued interest. This appeal is from the judgment of the court below entered against plaintiff on suit for refund of the tax. The case was tried upon a stipulation of facts and three affidavits dealing with the physical and mental condition of Mr. Loose.

Prior to 1918 it was Mr. Loose's custom to go to New York twice each year where he kept a safety deposit box and he would clip and cash the matured coupons on these bonds. During that year he suffered a paralytic stroke followed by two months of illness, and thereafter he was able to be about with the assistance of a nurse until May, 1923, when a second stroke occurred followed by severe illness culminating in his death. After the stroke in 1918 he discontinued the semiannual trips to New York and between that time and the second stroke he would stop in New York in June and September en route to and from his summer home in Gloucester, Mass. After the last attack in May, 1923, deceased was not able, physically or mentally, to attend to any business or to stop at New York on his way to Gloucester in June of that year or at any time thereafter. After 1918 the safety deposit box was rented in the name of Mrs. Loose with power of attorney for access to Mr. Loose, and upon all trips to the box between the first and second illnesses he was accompanied by Mrs. Loose, who performed the actual operation of clipping the bonds and attending to his other business affairs in New York. He never gave any one else authority to open the safety deposit box, and his wife never went to it without him. It further appears that following the second stroke in May, 1923, Mrs. Loose "was never away from her husband a half an hour," because his condition was so serious that his death might occur at any time, and for that reason she did not go to the box during the last trip to Gloucester in 1923 or thereafter before his death.

Deceased made tax returns upon a cash receipts and disbursements basis, and the solvency of the corporations issuing the bonds was stipulated.

While various matters are argued under numerous headings, the broad question presented in the case is whether the interest represented by the coupons on these bonds, which matured before but were not clipped and presented until after the death of Mr. Loose, constituted his income or a part of the estate.

The Revenue Act of 1921 and the applicable regulations authorized thereunder govern this case. Section 213 of said Act, 42 Stat. 237, defined gross income to include "gains, profits, and income derived * * * also from interest, rent, dividends, securities. * * * The amount of all such items (except as provided in subdivision [e] of section 201) shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period. * * * "

Section 201 (e) of that Act, 42 Stat. 228, reads: "For the purposes of this Act, a taxable distribution made by a corporation to its shareholders or members shall be included in the gross income of the distributees as of the date when the cash or other property is unqualifiedly made subject to their demands."

By section 1303 of the Act, 42 Stat. 309 (26 USCA § 1245), the Commissioner was authorized to make all needful rules and regulations for the enforcement of the provisions of the act, pursuant to which authority the following regulations, among others, were promulgated:

Article 52 of regulations 62: "Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case, the income must be credited to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made. * * * "

Article 53 of regulations 62: "When interest coupons have matured and are payable, but have not been cashed, such interest payment, though not collected when due and payable, is nevertheless available to the taxpayer and should therefore be included in his gross income for the year during which the coupons matured."

There are two major contentions urged by appellant: First, that Congress did not intend to apply the income taxing statute to constructive receipt of income; and, second, that, if such was its intention, it should not be applied in the peculiar situation presented by the above facts.

Considering only the statute and the regulations issued thereunder, it would seem to follow that the coupons were income of the deceased as of the year 1923. They represented interest and fall flatly within the definition of gross income. Cases involving stock dividends afford an interesting analogy. The situation where a dividend was declared and checks sent out on December 31st so that none would be delivered before January 2d of the following year have presented the problem whether the income represented by said dividends was received in the year of declaration or in the year of receipt of the check. Some decisions favored the former date. Commissioner v. Bingham (C. C. A. 6) 35 F.(2d) 503, certiorari denied 281 U. S. 729, 50 S. Ct. 246, 74 L. Ed. 1146; Shearman v. Commissioner (C. C. A. 2) 66 F.(2d) 256. Others favored the latter date. Commissioner v. Adams (C. C. A. 1) 54 F.(2d) 228; Appeal of Georgia State Savings Assoc., 4 B. T. A. 748. The Adams and Shearman Cases discuss the intent of the statute to cover constructive receipt of income, the former negativing and the latter affirming the principle. Among other cases which throw light upon the matter are Avery v. Commissioner, 292 U. S. 210, 54 S. Ct. 674, 676, 78 L. Ed. 1216; North American Oil Consolidated v. Burnet, 286 U. S. 417, 423, 52 S. Ct. 613, 76 L. Ed. 1197; Massachusetts Mutual Life Ins. Co. v. United States, 288 U. S. 269, 53 S. Ct. 337, 77 L. Ed. 739; Union Guardian Trust Co. v. Burnet, 62 App. D. C. 74, 64 F.(2d) 712, 715; Darcy v. Commissioner, 66 F.(2d) 581 (C. C. A. 2); Schoenheit v. Lucas, 44 F.(2d) 476, 480 (C. C. A. 4); Hadley v. Commissioner, 59 App. D. C. 139, 36 F.(2d) 543; Brooks v. Commissioner (C. C. A.) 35 F.(2d) 178; Burns v. Commissioner, 31 F.(2d) 399, 401 (C. C. A. 5), certiorari denied Burns v. Lucas, Com'r of Internal Revenue, 280 U. S. 564, 50 S. Ct. 25, 74 L. Ed. 618; Raleigh v. United States, 5 F. Supp. 622 (Ct. Cl.); Freeman v. United States, 3 F. Supp. 301 (D. C. Pa.); Kales v. Woodworth, 20 F.(2d) 395, 401 (D. C. Mich.), affirmed in 32 F.(2d) 37 (C. C. A. 6), certiorari denied 280 U. S. 570, 50 S. Ct. 27, 74 L. Ed. 623; Park v. Gilligan, 293 F. 129, 131 (D. C. Ohio); Eakins v. United States, 36 F.(2d) 961 (D. C. N. Y.); Nichols v. United States, 64 Ct. Cl. 241. Also, see Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; American National Co. v. United States, 274 U. S. 99, 47 S. Ct. 520, 71 L. Ed. 946; Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; United States v. Boston & Maine R. R. Co.,

279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929; Rouss v. Bowers, 30 F.(2d) 628 (C. C. A. 2), certiorari denied 279 U. S. 853, 49 S. Ct. 348, 73 L. Ed. 995, and Great Northern Ry. Co. v. Lynch, 292 F. 903 (D. C. Minn.); Eldridge v. Commissioner, 30 B. T. A. 1321.

In many of the above cases expressions like the following appear: "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." Corliss v. Bowers, 281 U. S. 376, 378, 50 S. Ct. 336, 337, 74 L. Ed. 916.

In the Avery Case the Supreme Court came to the conclusion reached in the Adams Case, namely, that stock dividend checks although mailed December 31st are, when not received until January 2d of the following year, income of the new year. It was noted that " * * * there is nothing to show that petitioner could have obtained payment on December 31st. * * * Nothing indicates that it recognized an unrestricted right of stockholders to demand payment except through checks sent out in the usual way. The checks did not constitute payments prior to their actual receipt."

This language applies with peculiar force to the instant case. Here, aside from deceased's physical handicap, there was nothing to prevent his obtaining payment of the coupons in 1923. He had an unrestricted right to demand payment.

Not recognizing constructive receipt of income as income realized would open the door to fraud by leaving it within the power of the taxpayer to reduce income to possession at such time as would best suit his taxation purposes. Such right of selection does not rest with the taxpayer, nor does it find approval in the cases. Newman v. Commissioner (C. C. A. 10) 41 F.(2d) 743; Freeman v. United States, 3 F. Supp. 301 (D. C. Pa.); Security First Nat. Bank v. Commissioner, 28 B. T. A. 289.

■ For some years prior to the enactment of the revenue law here involved the Commissioner had promulgated and enforced administrative rules to the general effect that income subject to control and possession should be regarded as received or realized for income tax purposes, although not actually reduced to possession. The subsequent enactment of statutes without substantial change therein raises a strong presumption that the Congress viewed the regulations as in accord with its intent. See Skinner v. Eaton (C. C. A.) 45 F.(2d) 568; Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457.

■ Our conclusion as to the first of the two matters urged is that the statutes involved should be construed as covering constructive receipt of income when applied to taxpayers on the cash basis. As bearing on this conclusion, see In re Booth's Estate, 139 Misc. 253, 248 N. Y. S. 264, decided by the Surrogate's Court of Kings county, N. Y., which involved a state tax and a situation where a dividend was declared and available before death, but not reduced to possession, the court holding that a dividend declared before death becomes the property of the deceased and passes to his estate by his death.

■ We then come to a consideration of appellant's contention that, even though the constructive receipt of income be within the intent of the statute, it does not apply in that respect to the peculiar situation here brought about by the physical handicap under which the deceased labored, which condition rendered him powerless to avail himself of the actual receipt of the income within his lifetime. If the sole basis and reason for constructive receipt of income were the avoidance of fraud in tax evasion, this argument would carry much force because there was obviously no thought of tax evasion here. However, the strongest reason for holding constructive receipt of income to be within the statute is that for taxation purposes income is received or realized when it is made subject to the will and control of the taxpayer and can be, except for his own action or inaction, reduced to actual possession. So viewed, it makes no difference why the taxpayer did not reduce to actual possession. The matter is in no wise dependent upon what he does or upon what he fails to do. It depends solely upon the existence of a situation where the income is fully available to him. Here the circumstances are peculiar and perhaps harsh in their consequences, but "that it was not convenient and was perhaps physically impossible for him to appear at the offices of the various corporations before the year closed and demand the cash did not destroy his legal right to do so." Commissioner of Internal Revenue v. Bingham (C. C. A. 6) 35 F.(2d) 503, 504, certiorari denied 281 U. S. 729, 50 S. Ct. 246, 74 L. Ed. 1146. So far as the income itself was concerned it was entirely available to him and could have been reduced to actual possession and realization.

We have not undertaken to discuss each of the matters urged by appellant, but only the two issues which seem to us to be of most importance and controlling.

The judgment is affirmed.