KASHIWA, Circuit Judge.
 

 This is an appeal by the United States from a judgment of the Claims Court granting taxpayers, Joseph A. and Dorothy D. Moller, a tax refund for the years 1976 and 1977. 1 Cl.Ct. 25, 553 F.Supp. 1071 (1982). The Claims Court concluded that taxpayers were active investors engaged in the “trade or business” of making investments and held that taxpayers were entitled to deduct the expenses of two home offices under I.R.C. § 280A. For the reasons stated below, we reverse.
 

 FACTS
 

 Since 1965 taxpayers have relied almost entirely on the income derived from their investments for their support. Their only other sources of income have been two small pensions and social security payments.
 

 The Mollers’ investments consist of four portfolios of stocks and bonds. Mr. and Mrs. Moller own an investment portfolio individually and each receives income from a portfolio held in trust. However, they have full management control of all four portfolios, including those held in trust.
 

 In 1976 and 1977 taxpayers devoted their full time to their investment activities. Each spent approximately 40-42 hours per week in connection with these activities. They kept regular office hours and monitored the stock market on a daily basis. They made all their investment decisions on their own. The total value of the four portfolios was $13,500,000 in 1976 and $14,-500,000 in 1977.
 

 The Mollers engaged in a variety of activities in managing their portfolios. They maintained a “watch list” listing all stocks on the New York Stock Exchange that were considered to be potential purchases. They kept detailed records of the stocks in their portfolios. They also subscribed to and regularly studied a number of financial publications and services.
 

 The Claims Court concluded that taxpayers engaged in 83 security purchase transactions and 41 sales transactions in 1976 and 76 purchase and 30 sales transactions in 1977. Eight of the security purchase transactions in 1976 and nine in 1977 consisted of deposits to secure shares in interest-bearing common trust accounts; three transactions in 1976 and 23 in 1977 consisted of invasions by Mrs. Moller of her trust corpus; and 14 transactions in 1974 and nine in 1977 consisted of stocks acquired through splits and dividends. Twenty-two of the sales transactions in 1976 and seven in 1977 were withdrawals from common trust accounts.
 
 [1]
 
 
 *812
 
 The stocks which taxpayers sold in 1976 and 1977 had been held for an average of more than 3V3 and 8 years, respectively.
 

 The taxpayers did not purchase stocks for speculative purposes. They were primarily interested in long-term growth potential and the payment of interest and dividends. Interest and dividend income was over 98% of their gross income in 1976 and 1977. In 1976 their income from the sale of securities was only $612, while in 1977 their sales resulted in a loss of $223.
 

 The taxpayers also invested in Treasury Bills but they did so to maintain liquidity and earn interest. Of the taxpayers’ 46 Treasury Bill transactions in 1976 and 1977, only 7 involved bills sold before maturity.
 

 The Mollers maintained a summer and a winter residence. Each house had quarters in which the taxpayers conducted their investment activities. The taxpayers kept regular hours and used the quarters exclusively for investment activities.
 

 In managing their portfolios, the taxpayers incurred expenses of $22,659.91 in 1976 and $29,561.69 in 1977, and deducted these on their joint income tax returns. The expenses attributable to maintaining the taxpayers’ two home-offices amounted to $7,439.65 in 1976 and $7,247.21 in 1977.
 
 [2]
 

 The Internal Revenue Service disallowed that portion of the claimed deductions based on the home-office expenses for both offices and asserted deficiencies against the taxpayers for the years 1976 and 1977.
 
 [3]
 
 The taxpayers paid the deficiencies and filed claims for refunds. After these claims were disallowed, the taxpayers brought this action seeking recovery of the taxes paid, plus interest.
 

 The Claims Court held that taxpayers were investors, not traders, but were nevertheless engaged in the trade or business of making investments and therefore entitled to deduct their home-offices expenses under section 280A of the Internal Revenue Code.
 

 OPINION
 

 I
 

 Section 280A was added to the Internal Revenue Code of 1954 by the Tax Reform Act of 1976, Pub.L. No. 94-455, 90 Stat. 1520, to provide “definitive rules * * * governing the deductibility of expenses attributable to the maintenance of an office in the taxpayers’ personal residence.” S.Rep. No. 94-938, 94th Cong., 2d Sess. 144, 147,
 
 reprinted in
 
 1976 U.S.Code Cong. & Ad. News 2897, 3576, 3579; H.R.Rep. No. 94-658, 94th Cong., 2d Sess. 157, 160,
 
 reprinted in
 
 1976 U.S.Code Cong. & Ad.News 2897, 3050, 3053. Section 280A generally disallows all deductions for a taxpayer’s use of a residence. Section 280A(c)(l)(A), however, provides an exception to this rule for that portion of the residence used as “the principal place of business for any trade or business of the taxpayer.”
 
 [4]
 

 
 *813
 
 In order to get a deduction under section 280A, a taxpayer must conduct an activity which is a trade or business, the principal office of which is in his home.
 
 [5]
 
 Prior to the enactment of section 280A, home-office expenses could have been deducted either under I.R.C. § 162(a), if incurred in carrying on a trade or business, or under I.R.C. § 212 if incurred for the production of income. The legislative history of section 280A makes clear that a taxpayer can no longer take a home-office deduction for an activity where it is for the production of income within the meaning of section 212 but is not a “trade or business” under section 162. S.Rep. No. 94-938 at 149, U.S.Code Cong. & Ad.News at 3581.
 
 See Curphey v. Commissioner, 73
 
 T.C. 105 (1980).
 

 The principal question in the instant case is whether the taxpayers’ investment activity was a trade or business.
 

 II
 

 Neither the Internal Revenue Code nor the regulations define “trade or business." However, the concept of engaging in a trade or business, as distinguished from other activities pursued for profit, has been in the Internal Revenue Code since its inception and has generated much case law.
 

 In determining whether a taxpayer who manages his own investments is engaged in a trade or business, the courts have distinguished between “traders,” who are considered to be engaged in a trade or business, and “investors,” who are not.
 
 See, e.g., Levin v. United States,
 
 597 F.2d 760, 765 (Ct.Cl.1979). Contrary to the holding of the trial court, investors are considered to be merely engaged in the production of income.
 
 See Purvis v. Commissioner,
 
 530 F.2d 1332 (9th Cir.1976).
 

 This court’s predecessor, the Court of Claims, has defined a trader as one whose profits are derived from the “direct management of purchasing and selling.”
 
 Levin
 
 597 F.2d at 765. The Ninth Circuit has adopted a similar test to distinguish between investment and trading accounts:
 

 In the former, securities are purchased to be held for capital appreciation and income, usually without regard to short-term developments that would influence the price of securities on the daily market. In a trading account, securities are bought and sold with reasonable frequency in an endeavor to catch the swings in the daily market movements and profit thereby on a short term basis.
 

 Purvis,
 
 530 F.2d at 1334, quoting
 
 Liang v. Commissioner, 23
 
 T.C. 1040, 1043 (1955).
 

 Therefore, in order to be a trader, a taxpayer’s activities must be directed to short-term trading, not the long-term holding of investments, and income must be principally derived from the sale of securities rather than from dividends and interest paid on those securities. In determining whether a taxpayer who manages his own investments is a trader, and thus engaged in a trade or business, relevant considerations are the taxpayer’s investment intent, the nature of the income to be derived from the activity, and the frequency, extent, and regularity of the taxpayer’s securities transactions.
 
 See Purvis,
 
 530 F.2d at 1334.
 

 The Claims Court concluded that taxpayers were investors and not traders because they were primarily interested in the long-term growth potential of their stocks. We agree. Mr. Moller testified that he was looking for long-term growth and the payment of dividends. In addition, the taxpayers did not derive their income from the relatively short-term turnover of stocks, nor did they derive any significant profits through the act of trading. Interest and dividend income was over 98% of taxpayers’ gross income for 1976 and 1977, and in 1976 their profit from the sale of securities was only $612, while in 1977 their sales resulted in a loss of $233.
 

 The number of sales transactions made by the taxpayers also leads to the conclusion that they were not traders in securities. In the cases in which taxpayers have been held to be in the business of trading in
 
 *814
 
 securities for their own account, the number of their transactions indicated that they were engaged in market transactions on an almost daily basis.
 
 See Levin,
 
 597 F.2d at 765;
 
 Fuld v. Commissioner,
 
 139 F.2d 465 (2d Cir.1943). At most, the Mollers engaged in 83 security purchase transactions and 41 sales transactions in 1976 and 76 purchase and 30 sales transactions in 1977.
 
 [6]
 

 Moreover, taxpayers did not “endeavor to catch the swings in the daily market movements and profit thereby on a short term basis.”
 
 Purvis,
 
 530 F.2d at 1334. The stocks owned by taxpayers, which they sold during 1976 and 1977, had been held for an average of over
 
 Zlh
 
 and 8 years, respectively-
 

 The Mollers were investors and not traders. The Claims Court so concluded and we agree.
 

 Ill
 

 The Claims Court, however, went on to hold that despite the fact that the Mollers were investors, they were in the trade or business of making investments. The court distinguished between passive and active investors and concluded that the Mollers were active investors engaged in a trade or business because their investment activities were regular, extensive, and continuous, and they involved the active and constant exercise of managerial and decision-making functions. We disagree.
 

 A taxpayer who merely manages his investments seeking long-term gain is not carrying on a trade or business. This is so irrespective of the extent or continuity of the transactions or the work required in managing the portfolio.
 
 Higgins v. Commissioner,
 
 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941). The fact that the Mollers spent much time managing a large amount of money is not determinative of the question whether they were engaged in a trade or business.
 

 In
 
 Higgins
 
 a taxpayer who resided abroad maintained an office in the United States to handle bookkeeping and other details of his extensive security transactions. The taxpayer directed these activities from abroad. He sought primarily permanent investments but did make changes in his portfolio. Despite the fact that the taxpayer devoted a considerable amount of time to overseeing his securities, the Court held that his securities activities did not constitute a trade or business:
 

 The petitioner merely kept records and collected interest and dividends from his securities, through managerial attention for his investments. No matter how large the estate or how continuous or extended the work required may be, such facts are not sufficient as a matter of law to permit the courts to reverse the decision of the Board.
 

 312 U.S. at 218, 61 S.Ct. at 478.
 

 The Claims Court, relying on
 
 Kales v. Commissioner,
 
 101 F.2d 35 (6th Cir.1939), distinguished the
 
 Higgins
 
 case on the basis that the taxpayer’s activities in
 
 Higgins
 
 “were not at all comparable to the regular, extensive, and continuous activities of the plaintiffs in this case.” In
 
 Kales,
 
 the Sixth Circuit held that a taxpayer was engaged in the trade or business of managing her own investments because her management activities were “extensive, varied, regular and continuous.” 101 F.2d at 39. However, in a subsequent case, the Sixth Circuit recognized that “the decision in
 
 Kales
 
 was impliedly if not expressly disapproved in
 
 Higgins * *
 
 *.”
 
 Goodyear Investment Corp. v. Campbell,
 
 139 F.2d 188, 191 (1943).
 
 [7]
 

 The Claims Court erred in relying on the
 
 Kales
 
 case. The “regular, extensive, and continuous” test is not in itself the correct test for determining whether a taxpayer is engaged in the trade or business of managing his own investments. In
 
 Higgins,
 
 the Court stated that continuity and extent of investment activity were not determinative
 
 *815
 
 of the question of whether a taxpayer who manages his own investment is engaged in a trade or business. In a subsequent case,
 
 Whipple v. Commissioner,
 
 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963), the Court stated that it had established a definition of trade or business in
 
 Higgins
 
 and went on to explain the import of the case:
 

 In response to the
 
 Higgins
 
 case and to give relief to Higgins-type taxpayers ... Section 23(a) (now I.R.C. § 162) was amended not by disturbing the Court’s definition of “trade or business” but by following the pattern that had been established since 1916 of “[enlarging] the category of incomes with reference to which expenses were deductible” ... to include expenses incurred in the production of income.
 

 373 U.S. at 200, 83 S.Ct. at 1172.
 

 The Internal Revenue Code, however, does not provide that all expenses incurred in the production of income are deductible expenses. In
 
 Whipple,
 
 section 166, which restricts bad debt deductions to those incurred in a trade or business, as section 280A restricts home-office deductions to expenses incurred in a trade or business, was at issue. In denying the taxpayer a deduction because the bad debt was incurred in an activity entered into for profit, and not in a trade or business, the Court stated: “[w]hen the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business * * *.” 373 U.S. at 202, 83 S.Ct. at 1174.
 

 The Court of Claims, relying on
 
 Higgins,
 
 has also stated: “Managing one’s own investments in securities is not the carrying on of a trade or business, irrespective of the extent of the investments or the amount of time required to perform the managerial functions.”
 
 Wilson v. United States,
 
 376 F.2d 280, 293 (1967).
 

 In the instant case, taxpayers were not engaged in a trade or business. They were active investors in that their investment activities were continuous, regular, and extensive. However, this is not determinative of the issue and it is not the correct test. What is determinative is the fact that the taxpayers’ return was that of an investor: they derived the vast majority of their income in the form of dividends and interest; their income was derived from the long-term holding of securities, not from short-term trading; and they were interested in the capital appreciation of their stocks, not short-term profits. Merely because taxpayers spent much time managing their own sizeable investments does not mean that they were engaged in a trade or business.
 

 CONCLUSION
 

 Although taxpayers’ investment activity was entered into for the production of income, it did not rise to the level of a trade or business. Section 280A restricts home-office deductions to expenses incurred in the carrying on of a trade or business. Therefore, taxpayers were not entitled to a deduction under this section.
 

 Because we decide this case on the grounds that taxpayers were not engaged in the trade or business of making investments, we need not and do not reach the issue of whether they could deduct the expenses of both their home-offices as their “principal place of business.”
 

 Accordingly, the judgment of the Claims Court is reversed.
 

 REVERSED.
 

 [1]
 

 . Because the deposits, the corpus invasions, the stock splits, and the withdrawals are not market transactions equivalent to the purchas
 
 *812
 
 ing and selling of stocks, the number of purchases should actually be 58 in 1976 and 35 in 1977 and the number of sales should be 19 in 1976 and 23 in 1977. Our decision does not depend, however, on a reduction in the number of transactions.
 

 [2]
 

 . The home-office expenses included depreciation, utilities, insurance, and various maintenance expenses attributable to the offices.
 

 [3]
 

 . The other investment expenses amounting to, $15,220.26 for 1976 and $22,314.48 for 1977 included subscriptions, office supplies, accounting and legal services, and other similar items. There is no dispute that taxpayers are entitled to deduct these expenses under I.R.C. § 212.
 

 [4]
 

 . Section 280A provides in pertinent part: DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC.
 

 (a) General Rule. — Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.
 

 * * * * * *
 

 (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.—
 

 (1) Certain business use. — Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—
 

 (A) the principal place of business for any trade or business of the taxpayer, * * *.
 

 [5]
 

 . There is also the statutory requirement that the office be “exclusively used on a regular basis.” The government concedes that this requirement has been met.
 

 [6]
 

 . See footnote 1 infra.
 

 [7]
 

 . The Supreme Court granted certiorari in
 
 Higgins
 
 to resolve the conflict between the Sixth Circuit’s decision in
 
 Kales
 
 and the Second Circuit’s decision in
 
 Higgins v. Commissioner,
 
 111 F.2d 795 (2nd Cir.1940), which it affirmed. 312 U.S. at 215 n. 5, 61 S.Ct. at 477 n. 5.