**William E. CAMPBELL and Gwendolyn J. Campbell**

v.

**UNITED STATES of America.**

**No. CA 3–82–1738–C.**

United States District Court, N.D. Texas, Dallas Division.

March 26, 1984.

G. Tomas Rhodus, Lawrence R. Jones, Jr., and M. Bruce Peele, Rhodus, Jones & Brutsche, Dallas, Tex., for plaintiffs; Lester V. Baum, Johnson, Bromberg & Leeds, Dallas, Tex., of counsel.

William W. Guild, Rick K. Disney, Attys., Tax Div., Dept. of Justice, James A. Rolfe, U.S. Atty., Dallas, Tex., for defendant.

## OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

### I. INTRODUCTION

Plaintiff, William E. Campbell, is in the real estate business. He is the sole owner of a corporation that brokers real estate. He also brokers real estate individually. Plaintiff is also the sole owner of various parcels of real estate. Lastly, he is a partner in several real estate joint ventures.

In taxable years 1976 and 1977, Mr. Campbell had losses in his individual real estate dealings that amounted to $58,445.14 and $96,845.69, respectively.

In those years, he had losses of $278,641.83 and $252,588.15 as his distributive share of losses incurred by the real estate joint ventures.

Mr. Campbell reported his individual losses on Schedule C of his '76 and '77 returns and reported his distributive share losses on Schedule E of those returns.

Plaintiffs filed joint returns for the years 1976 and 1977 and wish to carry the losses shown back to the taxable years 1973 and 1974, when Mr. Campbell was single and had significant amounts of income.

Plaintiffs and the Defendant reached an impasse so this Civil Action was filed under 28 U.S.C. § 1346(a)(1).

Loss carry backs are possible under Section 172(a) of the Internal Revenue Code of 1954 (part of 26 United States Code) (unless otherwise stated all sections cited hereafter will be to the I.R.C. of 1954), which provides in (a) that: *"Deduction Allowed.* —There shall be allowed as a deduction for the taxable year an amount equal to ... (2)

the net operating loss carry back to such year ..."

There is a limitation to these loss carry backs which is expressed in Section 172(d)(4) as:

(4) *Nonbusiness Deductions of Taxpayers Other Than Corporations.*—In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business ...

The Parties are not contesting the allowability of the expenses but do differ over whether they are attributable to Plaintiffs', Mr. Campbell, trade or business.

If any or all of these expenses are allowable, the Parties dispute whether the full allowable expenses may be carried back or if only one-half may be carried back to Mr. Campbell's taxable years when he was not married.

## II. SCHEDULE C DEDUCTIONS

█ Mr. Campbell testified at trial that these expenses are related to his personal real estate brokerage activities.

Mr. Campbell finds properties that are probably, and hopefully, in areas of future growth. The goal is to purchase property at agricultural value and sell it at urban developmental value. Mr. Campbell takes title to these properties while he puts together joint ventures to hold the properties. When he takes title to these properties, he has no intention to hold them for investment. Mr. Campbell derives his profits from these land exchanges from his brokerage fees, which the Defendant does not appear to dispute to be ordinary income. Mr. Campbell's undisputed testimony was that the disputed Schedule C expenses were related to this production of ordinary income. Therefore, these expenses are in connection with Mr. Campbell's trade or business and are allowable.

## III. SCHEDULE E DEDUCTIONS

The real estate joint ventures in dispute were formed before Plaintiffs' marriage in February, 1976. Mr. Campbell testified that he entered into these ventures because oftentimes, the other venturers were unsophisticated in the real estate field. He believes that the unsophisticated investors do feel better about their investments when he also takes part in the venture. He did say, though, that he also joins to the ventures to make a profit off the enhancement of value of the venture properties.

The Defendant entered into evidence its Exhibit # 4, the joint venture agreement for an entity known as Rowlett Creek Company. This contract was put in evidence as a typical example of the agreements for the joint ventures in question.

Section 1.03 of Exhibit # 4 provides that the purpose of that contract is to acquire the subject piece of property "for investment purposes only, ..."

Section 4.01 of Exhibit # 4 sets out that Mr. Campbell is a 50% owner of this joint venture. Defendant's Exhibits # 1 and # 2 show that Mr. Campbell does have a small, 1 or 2 percent interest in a few of the joint ventures but otherwise has interests ranging from 10 to 50 per cent with a 75 per cent interest in one venture.

It may also be pertinent that the other 50% of this particular venture is owned by a very large local bank as trustee for the bank's retirement fund.

Plaintiffs' principal contention is that Mr. Campbell is in the real estate business, from top to bottom, and from side to side. As he is totally in the real estate business, the limitation of Section 172(d)(4) does not apply to him and the losses should be characterized as to him and not as to the joint venture partnerships.

The Court is of the opinion that it makes no difference to the outcome of this controversy if the character of the losses is determined by attribution to Mr. Campbell or the various joint ventures.

The losses that Plaintiffs want to carry back are for such things as interest, depre-

ciation, taxes, insurance, professional fees, and other expenses relating to the rental of the various properties as farm land.

This is important as Mr. Campbell wears more than one hat in relation to these joint ventures. First, he locates the land and either takes title to it in his name and then syndicates it into a joint venture or directly syndicates it into a joint venture. He then takes an ownership interest in the joint venture. But he is also named in the joint venture agreement to be the manager of the joint venture, serving without compensation but being reimbursed for his expenses. Last, either Mr. Campbell or his wholly owned corporation, Campbell Company of Dallas, Inc. sells the land for the joint venture.

Thus, Mr. Campbell either directly, or indirectly makes three separate profits from the joint ventures in question. He makes a profit when he locates the land and syndicates it into a joint venture. There is no dispute that this is part of his trade or business. He makes two profits, one directly, one directly or indirectly, upon the sale of the property. The profit for acting as a broker is also gain from his trade or business. The third profit is a result of Mr. Campbell's ownership of an interest in a joint venture which sells its piece of property.

Mr. Campbell's first two profits are undoubtedly ordinary in nature. The rub comes, when his profit (or loss) off his ownership interests is considered.

■ There are, undoubtedly, a few joint venture interests that Mr. Campbell holds in which any expectation of profit because of an increase in value of the land is minimal or de minimus. These interests are in the joint ventures in which Mr. Campbell has less than a 5% interest in the joint venture. It is apparent that these small interests were undertaken as an inducement to prospective joint venturers. These investments appear to have been made in the ordinary course of business and, therefore, the yearly expenses may be taken as ordinary deductions.

■ The remainder of Mr. Campbell's joint venture interests are at least 10% interests in their respective ventures. Though such determinations can never be set in concrete, it appears to the Court that Mr. Campbell had a significant motive to profit by the increase in value of the underlying land so that it cannot be said that the investments were made in the ordinary course of his real estate business.

The case of *Moller v. United States*, 721 F.2d 810 at 814 (Fed.Cir., 1983), points out that the amount of time spent managing an investment is not determinative of whether or not a taxpayer is engaged in the ordinary course of a trade or business. That Mr. Campbell may spend a large amount of time overseeing the development of the properties owned by the joint ventures does not mean that his ownership interest in those non-minimal investments is in the course of his real estate business. This is particularly so as Mr. Campbell anticipates receiving ordinary income directly or indirectly, through his wholly owned corporation, in the form of brokerage fees when the various joint venture properties are sold.

## IV. LOSS CARRY BACKS

■ Plaintiffs have cited *Wasson v. United States*, 250 F.2d 826 (5th Cir., 1958), cert. denied, 358 U.S. 815, 79 S.Ct. 22, 3 L.Ed.2d 57 (1958), for the proposition that 100% of the deductions related to Mr. Campbell's separate property that could not be taken in the respective years of 1976 and 1977 should be carried back to prior years. That case is clearly distinguishable. In that instance, the Plaintiff suffered a diminution of his separate property; some sheep and cattle died. This is a far different situation from the one now before this Court.

The deductions that Plaintiffs wish to have Mr. Campbell solely carry back are for such things as interest and taxes paid and for professional fees paid out of pocket expenses. This situation is covered by the case of *Stewart v. Commissioner of Internal Revenue*, 95 F.2d 821 (5th Cir., 1938).

That opinion specifies, at p. 822, "Since, one-half of the community income is to be taxed to the husband, it follows that the applicable deductions should also be divided between the husband and wife."

It appears from *Vallone v. Vallone*, 644 S.W.2d 455 (Tex., 1983), that the extensive time that Mr. Campbell spends on his real estate investments belongs to the community of the Plaintiffs. Therefore, any such profits, presumptively belong to the community. Under *Stewart*, above, the deductions belong to the community and must be taken one-half by each.

It is only logical, that if Mr. Campbell can only take one-half of these deductions on a current return, he can only carry back the unused portion of his one-half of the deductions.

### CONCLUSION

The Parties have agreed to do the arithmetic to put into effect this Court's rulings and present a judgment in accord with its rulings which the Court will sign and have entered.