HERMINE ZAMBAKIAN AND IRVING ZAMBAKIAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zambakian v. Commissioner
Docket No. 1253-84.
United States Tax Court
T.C. Memo 1986-219; 1986 Tax Ct. Memo LEXIS 386; 51 T.C.M. (CCH) 1101; T.C.M. (RIA) 86219; June 2, 1986. *386 During 1981, Ps maintained brokerage accounts on which they paid interest and from which they received interest and dividend income. In computing their 1981 tax liability, Ps did not consider the alternative minimum tax imposed by section 55, I.R.C.Held, because Ps were not engaged in the trade or business of investing, Ps' investment interest expenses are deductible as itemized deductions under section 163, I.R.C. These expenses are therefore includable in Ps' 1981 alternative minimum taxable income. Irving Zambakian, pro se. Richard F. Flaherty, for the respondent. NIMS
MEMORANDUM OPINION NIMS, Judge: Respondent determined a deficiency of $1,696.40 in petitioners' 1981 Federal income tax. The sole issue for decision is whether petitioners are subject to the alternative minimum tax imposed by section 55[1] as determined by respondent. Resolution of this issue turns on whether Irving Zambakian's investment activities during 1981 constituted a trade or business. The case was submitted fully stipulated.The stipulation of facts and attached exhibits *387 are incorporated herein by this reference. Petitioners Irving Zambakian (hereinafter sometimes referred to as Irving or petitioner) and Hermine Zambakian (Hermine), husband and wife, resided at Glen Ridge, New Jersey, at the time they filed the petition herein. During 1981, petitioners maintained brokerage accounts on which they paid interest and from which they received interest and dividend income. Irving and Hermine jointly filed a 1981 Form 1040 on which they listed their occupations as "investor" and "homemaker," respectively. On their 1981 Form 1040, they reported adjusted gross income of $6,629 determined as follows: wage income--0; interest and dividend income--0 [2] *388 ; capital loss--$3,000; and rents, royalties, partnerships, etc.--$9,629. From adjusted gross income of $6,629, petitioners subtracted excess itemized deductions of $2,826 and exemptions of $3,000 to arrive at taxable income of $803. Based on taxable income of $803, petitioners determined that they owed no Federal income tax for taxable year 1981. Petitioners, however, did not consider the alternative minimum tax provisions of section 55 in determining their 1981 tax liability. On Schedule B (Interest and Dividend Income) attached to their 1981 Form 1040, petitioners reported interest income of $2,679 and dividend income of $94,840. Petitioners offset the dividend income by investment interest expenses of $165,157. On Schedule D (Capital Gains and Losses) of their 1981 income tax return, petitioners reported net short-term capital losses of $33,648 [3] *389 and net long-term capital losses of $56,099. [4] On an attachment to Schedule D of their 1981 return, petitioners reported the following stock transactions: Date of
Date of
Long-Term
Short-Term
Capital
Capital
Stock
Purchase
Sale
Gain (or Loss)
Gain (or Loss)
Continental
Airlines
9/3/65
3/9/81
$ 322 Candel Oil
4/1/60
4/22/81 and
4,502 5/5/81
Barth Spencer
4/6/71 and
6/20/81
(1,043)
7/7/72
Mobil Corp.
7/14/80
7/13/31
(1,571)
El Paso Corp.
12/12/79
7/13/81
(71)
Conoco, Inc.
7/29/81
8/7/81
310 Iowa Beef
9/12/75
8/11/81
19,895 Santa Fe
International
2/4/81
12/21/81
4,783 Houston Oil
10/30/78
1/5/81
2,160 Houston Oil
5/16/77,
4/28/81
(5,816)
7/15/77 and 10/20/78
TOTAL
$19,949
$3,552 On Schedule E (Supplemental Income Schedule) attached to their 1981 Form 1040, petitioners reported rental income of $10,969 from the following investment properties: (1) a garage located in Westminster, Colorado; (2) a parking lot located in Denver, Colorado; and (3) certain land located in Arkansas. Petitioners also reported a partnership loss of $1,340 on this schedule. In the notice of deficiency, respondent allowed as itemized deductions petitioners' investment interest expenses to the extent of $107,119. Respondent further determined that these expenses were includable in petitioners' alternative minimum taxable income for 1981 as a tax preference item. Respondent therefore determined that petitioners were liable for the alternative minimum tax imposed by section 55 in the amount of $1,696.40. The sole isue for decision is whether petitioners are liable for the alternative minimum tax imposed by section 55 as determined by respondent. For the year in issue, section 55 provided in pertinent part: SEC. 55. ALTERNATIVE MINIMUM TAX FOR TAXPAYERS *390 OTHER THAN CORPORATIONS (a) ALTERNATIVE MINIMUM TAX IMPOSED.--In the case of a taxpayer other than a corporation, if-- (1) an amount equal to the sum of-- (A) 10 percent of so much of the alternative minimum taxable income as exceeds $20,000 but does not exceed $60,000 plus (B) 20 percent of so much of the alternative minimum taxable income as exceeds $60,000 but does not exceed $100,000, plus (C) 25 percent of so much of the alternative minimum taxable income as exceeds $100,000, exceeds (2) the regular tax for the taxable year, then there is imposed (in addition to all other taxes imposed by this title) a tax equal to the amount of such excess. (b) DEFINITIONS.--For purposes of this section-- (1) ALTERNATIVE MINIMUM TAXABLE INCOME.--The term "alternative minimum taxable income" means gross income-- (A) reduced by the sum of the deductions allowed for the taxable year, (B) reduced by the sum of any amounts included in income under section 86 or 667, and (C) increased by an amount equal to the sum of the tax preference items for-- (i) adjusted itemized deductions (within the meaning of section 57(a)(1)), and (ii) capital gains (within the meaning of section 57(a)(9)). * * * For purposes *391 of defining adjusted itemized deductions, section 57(a)(1) refers to section 57(b)(1) which provides as follows: (b) ADJUSTED ITEMIZED DEDUCTIONS.-- (1) IN GENERAL.--For purposes of paragraph (1) of subsection (a), the amount of the adjusted itemized deductions for any taxable year is the amount by which the sum of the itemized deductions (as defined in section 63(f)) other than-- (A) the deduction for State and local, and foreign taxes provided by section 164(a), (B) the deduction for medical, dental etc., expenses provided by section 213, (C) the deduction for casualty losses described in section 165(c)(3), and (D) the deduction allowable under section 691(c), exceeds 60 percent of the taxpayer's adjusted gross income reduced by the items in subparagraphs (A) through (D) for the taxable year. Petitioners argue that during 1981 they were engaged in the trade or business of investing, and, therefore, the investment interest expenses they incurred during 1981 were ordinary and necessary business expenses under section 162. Petitioners further argue that because section 162 deductions are not tax preference items, their investment interest expenses should not be included in alternative *392 minimum taxable income. Petitioners conclude that if their investment interest expenses for 1981 are excluded from alternative minimum taxable income, they are not liable for any alternative minimum tax in 1981. Respondent agrees that petitioners are not liable for any alternative minimum tax if their investment interest expenses are deductible as ordinary and necessary business expenses under section 162. Respondent maintains, however, that petitioners' investment activities did not rise to the level of a trade or business during 1981, and, therefore, that petitioners' investment interest expenses are properly deductible as itemized deductions under section 163(a). [5] *393 Respondent further maintains that as an itemized deduction, petitioners' investment interest expenses constitute a tax preference item which must be included in alternative minimum taxable income. Petitioners do not dispute respondent's disallowance of some of their investment interest expenses for 1981. The issue we must decide, therefore, is whether petitioners' investment activities rose to the level of a trade or business during 1981. In determining whether a taxpayer who manages his own investments is engaged in a trade or business, the courts have distinguished between "traders" and "investors." It has been held that taxpayers who are security traders are considered to be engaged in a trade or business. Moller v. United States,721 F.2d 810 (Fed. Cir. 1983). However, taxpayers who are simply investors in the stock market are not considered to be engaged in a trade or business, notwithstanding the frequency, extent and regularity of their investment activity. Higgins v. Commissioner,312 U.S. 212 (1941); see Moller v. United States,supra.
In Liang v. Commissioner,23 T.C. 1040, 1043 (1955), this Court distinguished between investment and trading accounts as follows: [I]n the former, securities are purchased to be held for capital appreciation and income, usually without regard to short-term developments that would influence the price of the securities on the daily market. In a trading account, securities are bought and sold with reasonable frequency in an endeavor to catch the swings in the daily market movements and profit thereby on a short-term basis. *394 Relying on this language, the Court of Appeals for the Federal Circuit made the following distinction between a trader and an investor: [I]n order to be a trader, a taxpayer's activities must be directed to short-term trading, not the long-term holding of investments, and income must be principally derived from the sale of securities rather than from dividends and interest paid on those securities. [Moller v. United States,721 F.2d at 813.] Applying the above definitions to the facts of this case, we find that during 1981 petitioners were investors rather than traders. During 1981, petitioners received dividend and interest income of $97,519 as compared to net gains of $23,471 on the sale of securities. Thus, during 1981, petitioners' gross income was principally derived from dividend and interest income rather than from the sale of securities. Moreover, during 1981, petitioners engaged only in two security purchase transactions and eleven sales transactions. The infrequency of petitioners' stock trades during 1981 belies any notion that petitioners' investment activities were directed toward short-term trading on daily market movements. Indeed, taxpayers who previously have been *395 found to be in the business of trading stock on their own account generally engaged in market transactions on an almost daily basis. See Levin v. United States,597 F.2d 760, 765 (Ct. Cl. 1979); Fuld v. Commissioner,139 F.2d 465 (2d Cir. 1943). We also note that nine of the eleven sales transactions which occurred during 1981 involved shares of stock which petitioners had held for periods ranging from 1 year to 21 years. The length of time petitioners held their stock is additional evidence that their investment activities were directed toward long-term holding of investments rather than short-term trading. Purvis v. Commissioner,530 F.2d 1332 (9th Cir. 1976), affg. per curiam T.C. Memo. 1974-164. Consequently, we are satisfied that petitioners' selling activities during 1981 were primarily directed to long-term holding of investments and the production of dividend and interest income rather than short-term trading.We therefore find that petitioners were investors in the stock market and were not in business as stock and securities traders during 1981. Under these circumstances, petitioners' interest expenses constitute a tax preference item for purposes of the section 55 alternative *396 minimum tax. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code of 1954 in effect for the year in question.↩
2. On lines 8(a) and 8(b) of their 1981 Form 1040, petitioners reported interest income of $2,679 and "negative" dividends of $70,192. In determining the amount of dividend income, petitioners offset dividend income of $94,840 by investment interest expenses of $165,157.
3. This amount included a short-term capital loss carryover of $37,170. 4. This amount included a long-term capital loss carryover of $76,048.↩
5. Section 163(a) provides that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."