HAROLD AND BETTY ASCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Asch v. Commissioner
Docket No. 10808-84.
United States Tax Court
T.C. Memo 1986-238; 1986 Tax Ct. Memo LEXIS 371; 51 T.C.M. (CCH) 1167; T.C.M. (RIA) 86238; June 10, 1986. *371 Held, Ps Are subject to the Limitations on investment interest deductions contained in section 163, I.R.C.Held further, Ps are not entitled to a refund of Federal income taxes paid in 1981. Harold Asch, pro se. Alan G. Merkin, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency of $26,889.38 in petitioners' 1981 Federal *372 income tax. The issues for decisions are: 1) whether petitioners are subject to the limitations on investment interest deductions contained in section 163(d); [1] and 2) whether petitioners are entitled to an income tax refund of $1,000 for 1981. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Harold Asch and Betty Asch, husband and wife, resided at Teaneck, New Jersey, when they filed the petition herein. During 1981, Betty Asch (Betty) received wages of $2,710 for services performed as a clerk for Consumers Utilities Service Corporation. During 1981, Harold Asch (hereinafter referred to as petitioner) received commissions totalling $94,530.43 for services performed as a registered representative for Philips, Appel and Walden, Inc. (hereinafter referred to as PAW). Rule 10 of the Constitution and Rules of the *373 New York Stock Exchange defines a registered representative as: [2]
[A]n employee engaged in the solicitation of orders for the purchase or sale of securities, or other similar instruments for the accounts of customers of his employer or in the solicitation of subscriptions to investment advisory or to investment management service furnished on a fee basis by his employer. The term "registered representative" does not apply to individuals who are engaged solely in the solicitation or handling of business in, or the sale of commodity contracts or who are engaged solely as securities traders, or securities arbitrageurs. As a registered representative for PAW, the manner in which petitioner performed his job was controlled and directed by PAW. Each transaction petitioner executed on behalf of a customer was reviewed by a PAW compliance staff examiner. PAW required petitioner to maintain daily trading records for purposes of this review. PAW also required petitioner to secure its approval when opening new accounts and to account for any losses suffered *374 by PAW which resulted from petitioner's error. During 1981, PAW provided petitioner with office space, a desk, telephone services, direct wire services, securities quotations and accounting records. PAW also provided petitioner with coverage under its workmen's compensation insurance and medical insurance and made payments to the New Jersey Unemployment Insurance Fund for petitioner's benefit. During 1981, each petitioner maintained a separate margin security account at PAW on which they incurred substantial interest expenses to purchase and carry securities. During 1981, they engaged in the following stock transactions: Date of
Date of
Short-Term Capital
Long-Term Capital
Stock
Purchase [3]
Sale
Gain (or Loss)
Gain (or Loss)
Johnson & Johnson
10/30/80 &
1/7/81 &
$ 25,147.15 11/11/80
1/12/81
Teledyne Inc.
1/29/81
2/19/81
(6,561.34)
Superior Oil
3/20/81
2/26/81
3,199.27 McIntyre Mines,
Ltd.
7/17/80 &
3/3/81
(9,381.15)
7/22/80
Kirby Expl. Co.
2/2/81
3/5/81
30,614.30 Syntex
1/7/81 &
(23,607.58)
1/15/81
Superior Oil
2/26/81
3/30/81 &
12,037.76 3/31/81
PDM
1/16/81 &
8/3/81
(56,046.66)
3/31/81
PDM
8/27/80 &
8/11/81
(66,842.49)
4/1/81
PDM
1974
8/11/81
54,622.27 SOC
3/19/81
2/26/81
2,129.74 Kirby Expl.
2/3/81
3/5/81
18,668.66 MP
6/3/81 &
3/18/81 &
(5,968.29)
7/21/81
3/26/81
SOC
2/26/81
3/31/81
8,491.80 SYN
4/1/81 &
4/23/81 &
(3,723.41)
4/2/81
5/1/81
Paradyne Corp.
4/24/81
6/11/81
(1,863.02)
PDM
1/19/81 &
8/3/81
(70,983.64)
4/15/81
PDM
7/21/80 &
8/3/81
(82,443.44)
5/18/81
PDM
1976 &
8/3/81
107,531.29 7/2/81
Total
($217,751.19)
$152,772.41 *375 On their 1981 joint Federal income tax return, petitioners reported dividend income of $18,009 and interest income of $40.12 from securities held in their margin security accounts. On Form 4952 (Investment Interest Expense Deduction) attached to their 1981 Form 1040, petitioners determined that some portion of the investment interest they incurred during 1981 to purchase and carry the securities held in their margin security accounts was not currently deductible under section 163(d). On Schedule A attached to their 1981 Form 1040, petitioners claimed $55,157.76 of the total investment interest they incurred to purchase and carry securities during 1981. On a 1981 amended income tax return, however, petitioners claimed additional investment interest expenses of $39,980.13. On the back of the amended return, petitioners stated "[i]nterest expense fully deductible in 1981. Error in computation on original return and only partially deducted. In the notice of deficiency, respondent determined *376 that petitioners were entitled to deduct investment interest of only $28,049 as a result of the deduction limitations contained in section 163(d). At the trial of this case, petitioner stated to the Court that he and Betty were entitled to an income tax refund of $726.98 for taxable year 1981. The Court requested petitioners to file an amendment to petition stating a basis for their claim. The record was held open until July 8, 1985, for receipt of the amendment to petition. On June 13, 1985, petitioners submitted an amendment to their petition, which provided as follows: The Petitioners in the above-entitled case are filing a cross-claim against Respondent in the amount of $1,000 xx/100 re: Amended Tax Return - filed and mailed July 22, 1982. OPINION The first issue for decision is whether petitioners are subject to the Limitations on investment interest deductions contained in section 163(d). Section 163(a) provides "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." With respect to interest paid on investment indebtedness, *377 however, section 163(d)(1) provides that in the case of taxpayer other than a corporation, the amount of investment interest which would otherwise be allowable as a deduction is limited to $10,000, plus the amount of net investment income produced by property owned by the taxpayer during the taxable year. Section 163(d)(3)(D) defines "investment interest" as "interest paid or accrued on indebtedness incurred or continued to purchase or carry property held for investment." Petitioners contend that during 1981 petitioner was engaged in the business of trading securities as an independent contractor for PAW, and, therefore, the interest petitioners incurred to purchase and carry securities for their own accounts was incurred in connection with a trade or business. Petitioners maintain that because section 163(d) does not limit the deductibility of interest incurred in connection with a trade or business, the limitations contained in section 163(d) do not apply to the interest expenses which they incurred to purchase and carry securities. Respondent agrees that section 163(d) would not limit the deductibility of petitioners' interest expenses if such expenses were incurred in connection *378 with a trade or business. [4] Respondent contends, however, that petitioners were not engaged in the business of trading securities for their own accounts during 1981, and, therefore, the interest expenses they incurred to purchase and carry securities were not incurred in connection with a trade or business. Respondent therefore concludes that petitioners' investment interest expenses are subject to the deduction limitations of section 163(d). We agree with respondent. In determining whether a taxpayer who manages his own investments in engaged in a trade or business, the courts have distinguished between "traders" and "investors." It has been held that taxpayers who are security traders are considered to be engaged in *379 a trade or business. Moller v. United States,721 F.2d 810 (Fed. Cir. 1983); Groetzinger v. Commissioner,82 T.C. 793 (1984), affd. 771 F.2d 269 (7th Cir. 1985), cert. granted    U.S.    (March 24, 1986). However, taxpayers who are simply investors in the stock market are not considered to be engaged in a trade or business, notwithstanding the frequency, extent and regularity of their investment activity. Higgins v. Commissioner,312 U.S. 212 (1941); Moller v. United States,supra;Groetzinger v. Commissioner,supra.
In Liang v. Commissioner,23 T.C. 1040, 1043 (1955), this Court distinguished between investment and trading accounts as follows: [I]n the former, securities are purchased to be held for capital appreciation and income, usually without regard to short-term developments that would influence the price of the securities on the daily market. In a trading account, securities are bought and sold with reasonable frequency in an endeavor to *380 catch the swings in the daily market movements and profit thereby on a short-term basis. Relying on this language, the Court of Appeals for the Federal Circuit made the following distinction between a trader and an investor: [I]n order to be a trader, a taxpayer's activities must be directed to short-term trading, not the long-term holding of investments, and income must be principally derived from the sale of securities rather than from dividends and interest paid on those securities. * * * [Moller v. United States,721 F.2d at 813.] Initially, we note that petitioners do not argue and the record contains no evidence that Betty participated in the management of her margin security account which she maintained with PAW during 1981. Thus, on the record before us, we find that Betty was not a securities trader during 1981, and, therefore, the interest she incurred to purchase and carry securities during 1981 was not incurred in connection with a trade or business. Consequently, we find that her interest expenses are subject to the deduction limitations of section 163(d). We are also satisfied that during 1981 petitioner was not engaged in the business *381 of trading securities for his own account. During 1981, petitioners received commission, dividend and interest income totalling $112,579.55 as compared to a net loss of $64,978.78 on the sale of securities. Thus, during 1981, petitioner's gross income was principally derived from commissions, interest and dividends rather than from the sale of securities. Moreover, during 1981, petitioners engaged in only 29 purchase transactions and 22 sales transactions. We do not think that the frequency of petitioner's security transactions evidences an "endeavor to catch the swing in the daily market movements." Taxpayers who previously have been found to be in the business of trading stock on their own account generally engaged in market transactions on an almost daily basis. See Levin v. United States,597 F.2d 760, 765 (Ct. Cl. 1979); Fuld v. Commissioner,139 F.2d 465 (2d Cir. 1943). We also note that petitioner did not file a Schedule C (Profit or (Loss) From Business or Profession) with respect to any business of trading in securities during 1981. This fact is an additional indication that petitioner did not consider himself to be engaged in the *382 business of trading in securities during 1981. Purvis v. Commissioner,530 F.2d 1332 (9th Cir. 1976), affg. per curiam T.C. Memo. 1974-164. To support his position that the interest expenses he incurred to purchase and carry securities were incurred in connection with a trade or business, petitioner argues that he worked as an independent contractor, rather than as an employee, for PAW. We, however, do not find the character of petitioner's relationship with PAW determinative of the issue before us. We therefore need not and do not decide whether petitioner worked for PAW as an independent contractor rather than as an employee. As a registered representative for PAW, petitioner solicited order for the purchase and sale of securities from PAW's customers and executed such orders with third parties. Petitioner did not purchase securities from nor sell securities the PAW's customers. Moreover, his duties as a registered representative did not include the purchase and sale of securities for his own account. Thus, even if petitioner worked for PAW as an independent contractor rather than as an employee, the interest expenses he incurred to purchase *383 and carry securities for his own account were not incurred in connection with his business as a registered representative. Consequently, we find that petitioner's interest expenses were not incurred in connection with any trade or business and, therefore, are subject to the deduction limitations of section 163(d). Accordingly, respondent's determination is sustained. Petitioners also claim in an amended petition that they are entitled to an income tax refund of $1,000 for taxable year 1981. The record, however, contains no evidence to support petitioners' position that they are entitled to such refund. Consequently, petitioners' claim for refund is denied. Rule 142(a). To reflect the foregoing, Decision will be entered for the Respondent.
Footnotes
1. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code of 1954 as amended and in effect during the year in issue. All rules references are to the Tax Court Rules of Practice and Procedure.↩
2. As a registered representative, petitioner was subject to the Constitution and Rules of the New York Stock Exchange.↩
3. We note that some of petitioners' stock sales preceded their stock purchases. Although not clear from the record, we assume that in these instances petitioners were selling short.↩
4. In House Report 91-413, Congress stated that section 163(d) is "applicable only to interest on indebtedness incurred or continued to purchase or carry property held for investment. * * * interest on funds borrowed in connection with a trade or business would not be affected by the limitation." H. Rept. 91-413 (Part 1) (1969), 1969-3 C.B. 200↩, 246.